JOHN H. FOGLESONG, Respondent, v. MODERN BROTHERHOOD OF AMERICA, Appellant.

Kansas City Court of Appeals, November 5, 1906.

1. **INDEMNITY INSURANCE: Construction of Policy.** The policy is the law by which the mutual rights and liabilities of the parties are to be measured, and should be construed strictly against the insurer, where they narrow the range and force of the allegation or provide for forfeiture.

2. ——: ——: **Total Disability: Substantial Inability: Jury.** Total disability in a policy of indemnity does not mean absolute and literal inability to perform any part of the assured's occupation but that he was disabled from the substantial performance of the material acts necessary in the prosecution of his business; and is therefore a question for the jury.

3. ——: ——: ——: ——: **Evidence.** Although it appears that the assured was able after the alleged disability to direct to some extent his business, it is competent for the defendant to show fully all that he did in that way as it goes to the extent of his disability.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED AND REMANDED.

*Higbee & Mills* and *Ball & Sparrow* for appellant.

(1) It was manifest error for the court to refuse to permit appellant to show that respondent directed what work should be done on his farm, and in that manner was able to carry on and conduct the avocation of farming. That clause of the benefit certificate under consideration here provides that, before the member is entitled to recover, he must be so permanently and totally disabled as to render him unable to "carry on or conduct any vocation or calling." (2) The court erred in overruling defendant's demurrer to the evidence offered at

the close of plaintiff's case. (3) As hereinbefore stated the contract of indemnity, or membership certificate, issued by appellant to respondent is somewhat unlike most others, and, for that reason it is impossible to find a case "on all fours" with the case at bar, but possibly the case more nearly like it than any other that can be found is the case of Lyons v. Assurance Co., 46 Iowa 631; Rhodes v. Assurance Co., 5 Lansing (N. Y.) 77; Post v. Rel. Assn., 122 Pa. St. 579, 6 Am. St. Rep. 147; Albert v. Chosen Friends, 34 Fed. 721; Hutchison v. Maccabees, 68 Hun 355, 22 N. Y. Supp. 801. (4) A person who is able to perform or direct any kind of labor or business, is not totally disabled. King v. K. of M. of W., 79 Ill. App. 145; Cox v. K. of M. of W., 25 Tex. Civ. App. 366, 60 S. W. 971; 4 Joyce on Insurance, sec. 3032; Bacon on Ben. Soc. and Life Ins., 595a; Coad v. Ins. Co., 61 Neb. 563, 85 N. W. 558; McMahon v. Chosen Friends, 54 Mo. App. 468.

*A. D. Morris, S. W. Mills* and *C. C. Fogle* for respondent.

(1) A policy of insurance is to be interpreted in all respects by the same rule as other contracts, and so as to ascertain the meaning and intention of the parties from the whole instrument. Brewing Co. v. Ins. Co., 63 Mo. 663; Straus v. Ins. Co., 94 Mo. 182; Wren v. K. of P., 83 Mo. App. 442. (2) If there is a doubt in respect of the meaning of the terms of a clause of an insurance policy, that doubt must be resolved in favor of the interpretation of the assured; although intended otherwise by the insurer. Hale v. Ins. Co., 46 Mo. App. 508. (3) In the construction of contracts, words are not to be taken in their broadest import, when they are equally appropriate in the sense limited to the object that the parties had in view, and their apparent intention as deduced from the whole instrument. Hoffman v. Ins. Co., 32 N. Y. 405. (4) Every intendment should

be made against a construction of a contract, under which it would operate as a snare. (5) Insurance companies are not restricted in the right to insert such terms and conditions in their policy as they see fit, but where equivocal language is used, especially such as is calculated to mislead, it is to be construed most strongly against the company using it. Reynolds v. Ins. Co., 47 N. Y. 597. (6) If the language in the policy is ambiguous and can be applied in two different ways, it should be construed most strongly against the insurer and all doubts be resolved in favor of the insured. (7) The policy is the law by which the mutual rights and liberties of the parties are to be measured and should be construed strictly against the insurer; where they narrow the range and force of the obligation. Wren v. K. of P., 83 Mo. App. 442. (8) That meaning of an insurance contract must be adopted which, is most favorable to the insured, and any doubt must be resolved in his favor, although intended otherwise by the insurer. Wren v. K. of P., 83 Mo. App. 442. (9) Total disability must from the necessity of the case be a relative matter and must depend largely upon the occasion and employment in which the parties insured is engaged. Kerr on Insurance, 385, 386; Neil v. United Friends, 44 N. E. 145; Wall v. Casualty Co., 111 Mo. App. 504; Mahon v. Chosen Friends, 54 Mo. App. 468; Kerr on Insurance, p. 447.

BROADDUS, P. J.—The plaintiff's suit is to recover indemnity on a benefit certificate issued by defendant, which provided: "Within a period of ninety days after receipt of satisfactory proof, of the permanent and total disability of the said member (plaintiff), which renders him unable to carry on or conduct any vocation or calling, and the surrender of this certificate, one-half the amount that would have been due beneficiary in case of the member's death, will be paid said member in full." The plaintiff's wife is the beneficiary named in the cer-

tificate, who in case of his death would be entitled to the sum of $1,000. The plaintiff alleges that he has suffered permanent and total disability and seeks to recover the sum of $500 by reason thereof, it being one-half of said $1,000 to which he would be entitled if he proves his case.

The plaintiff's vocation was that of a farmer, having lived on a farm all of his life. He was at the time of the trial fifty-seven years of age, and seriously afflicted in his right leg and had been so afflicted for more than three years. The evidence tended to show that the diseased condition of his leg was permanent and that it would be necessary to amputate it. It appears that in September, 1902, the disease began to make its appearance in plaintiff's right leg. From the beginning of the following December he was confined to his bed for a period of three months. After that, the condition of his leg improved so that he could walk upon crutches, and afterwards for a while he walked with the aid of a cane. After July, 1903, he dispensed with medical treatment and applied leaf tobacco to his diseased leg. It was shown that he directed the work to be done on his farm, and that he performed some labor himself. He drove the wagon while loading and unloading corn and in hauling coal from the mine. He aided to some extent in cultivating a crop of two thousand bushels of pickles. He plowed some and helped in the cutting and shocking of oats. Notwithstanding plaintiff performed certain farm labor, there was evidence tending to show that he was disabled from performing substantially the occupation of a farmer.

The defendant contends that, as the plaintiff was not disabled from directing his sons in carrying on the business of the farm, and did some of the work himself, his disability was not total. It is also contended that, if he was able to carry on any vocation in life, he had not suffered such total disability as the terms of the pol-

icy required in order for him to be entitled to the indemnity claimed. The plaintiff's insurance was not against his disability as a farmer, but such a total disability as would render him unable to carry on or conduct any vocation or calling. It is defendant's theory that, though plaintiff may not be considered a farmer in the strictest sense, that is, capable of doing farm work, yet, if he was capable of conducting farm work by direction, he was not entitled to recover under the terms of his policy. Bacon on Ben. Soc. & Life Ins., sec. 595a, supports that theory. He says: "Total disability naturally means totally disabled from all kinds of business unless by the contract the disability is to be only from the usual occupation of the assured." And the law seems to be so stated in King v. Sup. Tent K. of W. of W., 79 Ill. App. 145; Cox v. Same, 25 Tex. Civ. App. 366. If such is to be the construction placed upon the policy in suit, the defendant's demurrer to the evidence should have been sustained.

But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling, in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In

our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity. It has been said: "The policy is the law by which the mutual rights and liabilities of the parties are to be measured, and should be construed strictly against the insurer, where they narrow the range and force of the allegation or provide for forfeiture." [Renn v. Supreme Lodge K. of P., 83 Mo. App. 442; Hale v. Ins. Co., 46 Mo. App. 508.]

The language of the policy, "permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling," the vocation of the insured not being designated, should be construed as meaning, if anything, the vocation or calling which he might be following at the time he became disabled and not any vocation whatever which he might be able to follow after he had been disabled. [Wall v. Casualty Co., 111 Mo. App. 504.] We have seen to what absurd consequences a literal construction of the language would lead.

However, a similar question was determined recently by this court in James v. Casualty Co., 113 Mo. App. 622. There the policy assumed to define what was meant by the term, "wholly disabled," by the use of the words, "that the assured must be totally unable to perform any part of his duties." The court said: "We do not consider that such provision has any material control over the other portions of the clause. When parties enter into a contract it must be assumed that they intended that which in certain events or contingencies would mean something and have some effective force." The rule, we think, is decisive of the case.

But it is contended that plaintiff did not show that plaintiff's disability totally prevented him from carrying on the business of a farmer. Notwithstanding an

individual in some instances may be a farmer without performing manual labor, the plaintiff was not a farmer in that sense.  He was a farmer in the sense, the term is usually understood to express, that is, one who directs the business of a farm and works at farm labor.  The evidence showed that the plaintiff, not only, to some extent, directed the work on his farm, but also labored at farm work.  We have some authority in this State as to what constitutes total disability.  Where the insured was a brakeman and also a farmer, the evidence showed that after injury he went with his train on two runs, hiring a substitute to do the braking, gave directions about his farm and performed one trivial act of labor. It was held that the question of his total disability was for the jury to determine.  [Wall v. Casualty Co., supra.]  In James v. Casualty Co., supra, the plaintiff was a wholesale and retail merchant.  The evidence was to the effect that, "he came to his place of business almost daily, when he signed checks, approved orders for goods and dictated letters."  He went on a trip to New York to buy goods, but was unable to do many of the principal matters pertaining to his business.  He could not get about the store, but was compelled to sit in his office in a crippled condition.  We held that it was a question for the jury to determine whether his disability was total.  The court in construing the language of the policy said:  "We therefore hold the contract to mean, not that the assured was rendered absolutely and literally unable to perform any part of his occupation, but that he was disabled from performing substantially the occupation stated in the policy."  The opinion is supported by the authorities cited therein.

Total disability is construed to be a relative term. [McMahon v. The Supreme Council, 54 Mo. App. 468.] Kerr on Insurance, 385, 386, defines it thus:  "Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business per-

taining to his occupation. Total disability exists, although the insured is able to perform a few occasional acts, if he is unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labors so long as was reasonably necessary to effect a speedy cure." Notwithstanding the evidence detailed proved that plaintiff was able to direct to some extent his business of farming and did some work himself, it tended also to show that he was wholly disabled from doing all the substantial and material acts necessary to be done.

The defendant at the trial, on cross-examination, asked plaintiff whether he directed what was to be done on the farm, and a similar question was put to his two sons who testified in the case. Upon objections of plaintiff, the evidence solicited by the question was excluded. This action of the court is assigned as error. Although there was evidence that plaintiff directed to some extent the business on his farm, it was competent for the defendant to show fully all that he did in that way, as it went to show his ability for conducting his vocation as a farmer.

The instructions of the court to the jury are all predicated upon the theory of the law as we understand it: and those asked by defendant and refused by the court were properly refused, as they were based upon the theory that the term "total disability" was not to be construed as a relative term, but according to the most strict and literal interpretation. For the error noted, the cause is reversed and remanded. All concur.