## Aetna Life Insurance Co. of Hartford, Conn., v. Wells.

(Decided May 29, 1934.)

EDWARD L. ALLEN for appellant.
HOWARD and MAYO for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The grounds submitted for a reversal of the judg-- ment under a group insurance policy are that the company was entitled to a directed verdict, the admission of incompetent evidence, and erroneous instructions.

The policy provided indemnity for total disability to the employees of the North East Coal Company. The certificate issued to the appellee, who was a mine labor-er, amounted to $900. Total and permanent disability is claimed to have been the result of injuries sustained first in June and again in August, 1929, although the insured continued on the pay roll until the latter part of 1930 and the suit was not instituted until May, 1932.

The evidence introduced to sustain the claim is that plaintiff was injured while unloading some heavy steel in June, 1929. On this account he was treated by the company's doctors and was laid up for about a month. Upon return to work he was given a lighter job as a "sand dryer." While handling a tub of sand in August, 1929, the insured received a severe jerk and was badly ruptured. He was sent to the hospital by the mine superintendent and was again off from work about a month on account of the accident. After this, he sat around and directed his boy who actually did the work, although he was carried on the pay roll. There is corroborative evidence of these facts. Although not clearly presented, it appears that the insurance company was given notice of this accident, but declined to pay anything on account of the insured's disability. He testi-- fied that after he was hurt and since being discharged,

he had tried to work but had not been able to do so on account of his condition and that the doctors had advised him that he should not. There is other evidence sustaining the plaintiff in all of his testimony. It appears that the company's doctor, who treated him upon both occasions when he was injured, was not called and his testimony was not given. Dr. Ramey testified that in April, 1930, he found Wells with a hernia and paralysis agitans, or what is commonly called palsy. At that time he could not do anything like ordinary manual labor. He subsequently had examined him three or four times and pronounced him as being totally and permanently disabled. Dr. Stephens testified he examined the plaintiff in November, 1932, and found the same conditions. He expressed the opinion that he was totally disabled; that by wearing a proper truss he might be able to do light manual labor, but the paralysis is not curable; and that he was a bad operative risk for the hernia.

In defense the mine superintendent testified that Wells had been put at the sand house because an employee older in service had been placed in charge of the blacksmith shop. He further testified that a small boy could not do the work of wheeling sand which was a part of Wells' duties, and that upon several occasions he had seen Wells wheeling it. He was at the mine perhaps once a month and had not noticed any change in Wells' ability to work around the mine. He was not discharged in November, 1930, on account of any physical disability. His company, and, so far as he knew, the insurance company had no notice that Wells had been injured until summons was served in this suit. Little weight can be attached to most of the evidence of this witness because he was not in a position to know the actual condition of the plaintiff and because of his infrequent visits at the place he worked. He did not know in what manner he was discharging his duties. Dr. Archer, physician for the mine, examined Wells in November, 1930, and found that he had an inguinal hernia for which he was wearing a truss, but in his opinion he was not suffering with paralysis agitans. He did not consider him to be totally and permanently disabled, but stated it would not be advisable for him to go back to heavy work as a member of the ''gin'' crew or blacksmithing, the particular kind of labor he had been doing before he was hurt the first time. However, the cross-

examination of the doctor taken as a whole weakens some of his general statements made in direct examination. Dr. Hall had examined the plaintiff shortly after he had been ruptured and had removed his tonsils. He again saw him in March and November, 1932. He did not think he had paralysis agitans, yet stated on cross-examination that he did have a condition which affected his head, hands, and arms and which was very noticeable. It appears that the plaintiff was present before the jury at this time. He did not regard the plaintiff as being totally and permanently disabled.

Upon the whole case we think it is shown the plaintiff is clearly entitled to the benefits of his policy. While much is made of a failure to give prompt notice of the disability and of his delay in filing suit, we think it just as reasonable to say that the man was trying to do what he could to make a living. We have very frequently met with criticism of the beneficiaries of these policies because they did not do or try to do something. Perhaps the delay in filing suit was due to ignorance of his rights under his contract. At any rate, he brought it within the time fixed by the statutes.

The North East Coal Company was also a party defendant, but during the progress of the trial the suit was dismissed as against it. While the company was still a party, plaintiff testified that after he had filed his claim for disability benefits, he was discharged and his foreman told him that he was not able to do the work. His testimony as to what the foreman said is excepted to. At the time, the evidence was competent. Whether it remained so after the company was let out of the case does not matter much, for its retention in the record cannot be regarded as prejudicially erroneous.

Criticism is made of the instruction which defined the conditions under which the plaintiff could recover. It did not say that his disability must have existed for a period of six months. There was no disagreement as to the length of time the disability had existed. He was disabled all of the time or none of the time. Under the evidence, the criticism is trivial. The instruction submitted that the insured's disability must have been such as to have prevented him from "engaging in his occupation or performing any work of financial value in connection therewith," whereas, it is said, the provision of the policy was that he should be prevented from pursuing any occupation for wages or profit. Another in-

struction had correctly defined the term "totally disabled" to mean an inability to do substantially or practically all material acts in the transaction of plaintiff's regular occupation or business and in his customary and usual manner. This criticism is of the same character as that just noted. Finally, it is said that instruction No. 4 was erroneous because it made the jury the judge as to whether or not an operation could have been successfully performed on the plaintiff at a reasonable cost and with reasonable safety. The answer to this objection is that such an instruction should not have been given, for as we have recently held the insured person is not required to undergo an operation in order to recover the benefits of his contract. Jefferson Standard Life Insurance Company v. Hurt, 254 Ky. 603, — S. W. (2d) — decided May 28, 1934.

No reason being found sufficient for reversal, the judgment is affirmed.