## TEMPLES v. PRUDENTIAL INS. CO. OF AMERICA.—79 S. W. (2d) 608.

Middle Section.   November 16, 1934.

Petition for Certiorari denied by Supreme Court, February 23, 1935.

Sizer, Chambliss & Kefauver, of Chattanooga, for appellant, Insurance Co.

Haynes & Green, of Winchester, for appellee, Temples.

CROWNOVER, J. This was a suit by Pete U. Temples against the Prudential Insurance Company of America to recover on a group insurance policy, the master policy having been issued and delivered to his employer, the Nashville, Chattanooga & St. Louis Railway, at Nashville, and the certificate on same having been issued to him providing for the payment of $2,000 for total and permanent disability; it having been alleged in the bill that the insured had become totally and permanently disabled by reason of accident and illness while this policy was in force. And he further sought to recover 25 per cent statutory penalty because the defendant insurance company had failed and refused to pay him as provided in the policy after demand had been made upon it by the complainant as required by statute.

Defendant answered and denied that complainant was totally and permanently disabled, or that he became disabled while said policy was in force, and alleged that complainant's claim was denied, for the reason that his proofs of disability did not show that he was totally and permanently disabled within the meaning of the insurance policy while said policy was in effect.

A jury was demanded and the following issues were submitted:

(1) "Is complainant permanently and totally disabled to such an extent that he is by reason of such disability or incapacity rendered wholly, continuously and permanently unable to perform any kind of work for any kind of compensation of financial value during the remainder of his life?"

(2) "If complainant is so disabled when did such disability commence?"

(3) "Has the defendant Insurance Company received due proof of such disability as is required by the terms of the policy sued on?"

At the conclusion of all the evidence, defendant insurance company moved for a directed verdict, which motion was overruled.

The jury returned the following answers to the issues submitted: To the first issue they answered, "Yes." To the second issue they answered, "June 28, 1928, at the time he was working in the boiler." To the third issue they answered, "Yes."

Motion for a new trial having been overruled by the court and judgment entered in favor of complainant and against defendant

in the sum of $2,000, defendant appealed to this court and has assigned errors as follows:

"(1)  There is no evidence to sustain the judgment.

"(A.)  The undisputed evidence is that after plaintiff received his 'so-called disability' he worked at his regular job and received his regular wages for approximately ten months until he was discharged for misconduct.

"(B.)  The undisputed evidence is that plaintiff was able to obtain employment for substantial wages whenever he attempted to do so."

Pete U. Temples, an uneducated man, was employed by the Nashville, Chattanooga & St. Louis Railway, in 1927, as boiler maker's helper, at wages of $4.16 a day.

On February 1, 1927, certificate under group policy was issued to him, insuring him in the sum of $2,000 against total and permanent disability, etc.  He testified that his health was good at that time.

In 1928, while he was removing a drawbar from an engine, he became ruptured.  Other employees corroborate this fact.  He was carried home, and went to bed, suffering a great deal.  In three or four days he went back to work, although not able to work, because he was obliged to support himself and wife.

In January or February, 1929, he was again ruptured while removing an arch from an engine.  He had to be carried home, where he stayed a week or two.  His doctor advised an operation, but he was unable to pay the expenses of an operation.  He went back to work, suffering all the time.  He testified that his foreman, understanding his condition, called some other employee to help him when heavy things had to be lifted, so he was able to stay at the job at his same wages.  This statement was corroborated by other employees.

On April 5, 1929, the railway company discharged him because of his drinking liquor.  He testified that he would take a drink or two to relieve the pain he was suffering.

Several months later he applied to the railway company to be reinstated.  He was sent to the company's doctor for examination. After the examination, the railway company wrote him the following letter:

"With reference to your re-examination before being reinstated.

"This examination was conducted by our regular physician and was referred to our Chief Surgeon at Nashville and he advised that your condition would not justify your re-employment in the service and for this reason your application for reinstatement was declined.

"There was no malice in this matter as we have a right to examine men entering our service and have a rule which prevents us re-employing or reinstating men in the service who are physically incapacitated.

"It is with regret that we found that you were in a condition which prevented our further consideration of your re-employment."

Afterwards he worked for a few months as night watchman in the government relief work; operated a filling station for three months for compensation of about 75 cents a day; and worked in his brother's restaurant for four months for about a $1 a day.

Temples and his brother testified that his job in the restaurant was just a matter of charity; that he did not do any work. Temples says he did not do any work at the filling station, as he was not able.

Dr. A. P. Smith testified that Temples has a hernia in the right groin, an indirect inguinal hernia; that it is a dangerous condition, and he is not able to perform manual labor; that the condition could be cured by a major operation; that general anesthesia would be necessary in performing the operation, and there is always an element of danger in that; that such an operation would cost about $200; that a truss would give temporary relief if it could be properly fitted. He further testified that, when a person has hernia, there is some danger of locked bowel, which would result in death.

Notice of his disability was given the insurance company on November 12, 1931. They later denied liability on the ground that the proofs of disability showed that he was not totally disabled.

The master policy contains the following provision for total and permanent disability:

"If any person insured under this Policy shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on account of such insurance, while this Policy is in full force and effect and the said person is less than sixty years of age, the Company, upon receipt of due proof of such disability, will grant the following benefits."

The "Total and Permanent Disability" provision in the certificate is substantially the same.

It is undisputed that Temples sustained a hernia while in the employ of the railroad and while this policy was in force. But defendant insurance company contends that the fact that Temples worked at the same job after his injury as before, for six or eight months, and until discharged by the railway company, and afterwards worked in a restaurant for four months, operated a filling station for three months, and was night watchman, conclusively shows that he was not totally disabled.

Dr. Smith testified that he had hernia and that he was totally and permanently incapacitated to do manual labor. Temples testified that, while holding his same job at the railroad, he only "waited on" the boiler maker; that the boiler maker, knowing

his physical condition, did not ask him to lift heavy things, which had formerly been his job, but called other employees to help him when heavy pieces of equipment had to be moved; that he did practically nothing in his brother's restaurant, but his brother kept him there as an act of charity; and that he did not have to do any work at the filling station, there were boys to do the work.

Temples testified that he was not able to work since he was ruptured, but had to work or starve.

We are of the opinion that there was sufficient evidence on the question of his disability to carry the case to the jury. Metropolitan Life Insurance Company v. Noe, 161 Tenn., 335, 31 S. W. (2d), 689; Kane v. Metropolitan Life Insurance Co. (Mo. App., 1934), 73 S. W. (2d), 826, 829; Horn's Administrator v. Prudential Insurance Company (1933), 252 Ky., 137, 65 S. W. (2d), 1017; Prudential Insurance Company v. Downs, 251 Ky., 208, 64 S. W. (2d), 902.

Total disability and permanent disability are issues of fact to be determined on the evidence adduced in each individual case. Metropolitan Life Insurance Co. v. Noe, supra.

"The phrase 'total disability' has a well-understood meaning in the law of insurance. It does not mean a state of absolute helplessness. The decisions, almost without conflict, define that condition as an inability to do the material acts necessary to the prosecution of insured's business or occupation (and substantially all the material acts) in (substantially) his usual or customary manner. Cases so holding are too numerous to be set out. They are cited and quoted in 14 R. C. L., 1315, 1 C. J., 462, and Notes, 51 A. L. R., 1048, 41 A. L. R., 1376, 37 A. L. R., 151, 24 A. L. R., 203.

"One may still be described as totally disabled, although he is able at intervals to perform certain acts in connection with the former occupation or calling that he pursued." Pacific Mutual Life Ins. Co., v. McCrary, 161 Tenn., 389, 392, 32 S. W. (2d), 1052, 1053.

"Most of the courts, as pointed out in the earlier annotations, adhere to the liberal rule that the 'total disability' contemplated by an accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness; but the total disability contemplated means inability to do substantially all of the material acts necessary to the prosecution of the insured's business or occupation, in substantially his customary and usual manner." Burrell v. Provident Life & Accident Insurance Company, 162 Tenn., 672, 679, 39 S. W. (2d), 1031, 1033.

In Massachusetts Bonding & Insurance Company v. Worthy (Tex. Civ. App.), 9 S. W. (2d), 388, 393, the court said:

"It may be that appellee was physically able to perform some light labor, or to do some few things that would earn compensation; but that fact would not conclusively negative total disability within the

meaning of his policy. . . . We think it is sufficient if his injuries are such that he could not, in the exercise of ordinary prudence, perform any substantial part of the labor required in following some remunerative business or occupation.''

''The fact that the insured may do some work or transact some business duties during the time for which he claims indemnity for total disability or even the fact that he may be physically able to do so is not conclusive evidence that his disability is not total, if reasonable care and prudence required that he desist.'' Fitzgerald v. Globe Indemnity Co., 84 Cal. App., 689, 258 Pac., 458, 462; New York Life Insurance Co. v. McLean, 218 Ala., 401, 118 So., 753; Harrison v. Provident Life & Accident Insurance Insurance Co., 167 Tenn., 394, 70 S. W. (2d), 24.

The case of Horn's Administrator v. Prudential Insurance Company, supra, is very much in point. It was about a similar clause, and the Court of Appeals of Kentucky held it was a question for the jury.

The Court of Appeals of Missouri in an able opinion in the case of Foglesong v. Modern Brotherhood of America, 121 Mo. App., 548, 97 S. W., 240, 241, said:

''Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity. It has been said that: 'The policy is the law by which the mutual rights and liabilities of the parties are to be measured, and should be construed strictly against the insurer, where they narrow the range and force of the allegation or provide for forfeiture.' Renn v. Supreme Lodge, K. of P., 83 Mo. App., 442; Hale v. Ins. Co., 46 Mo. App., 508. The language of the policy, 'permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling,' the vocation of the insured not being designated, should be construed as meaning, if anything, the vocation or calling which he might be following at the time he became disabled, and not any vocation whatever which he might be able to follow after he had been disabled.

Wall v. Casualty Co., 111 Mo. App., 504, 86 S. W., 491. We have seen to what absurd consequences a literal construction of the language would lead."

We think the holding in the case of Prudential Insurance Company v. Wolfe (C. C. A.), 52 Fed. (2d), 537, is not the law in Tennessee, and the reasoning in the above case of Foglesong v. Modern Brotherhood of America, 121 Mo. App., 548, 97 S. W., 240, 241, is much better, and more in accord with the Tennessee cases, such as Pacific Mutual Life Insurance Company v. McCrary, supra, and Harrison v. Provident Life & Accident Insurance Company, supra, and we are content to follow them. If a man is wholly, continuously, and permanently unable to follow his usual occupation or any other gainful occupation or work during his lifetime, then he is totally and permanently disabled within the meaning of the phrase "total and permanent disability," otherwise the clause would be rendered meaningless as stated in the case of Foglesong v. Modern Brotherhood of America, supra. If he works when he is not able to work and when it impairs or endangers his health, and his disability is of such character that ordinary care requires him to desist, then total disability exists, and it is a question for the jury. Horn's Administrator v. Prudential Insurance Company, supra.

"Total disability does not mean absolute physical inability to work at one's occupation, or to pursue any occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence required him to desist and he did in fact desist from transacting his business. It is sufficient if the insured's sickness was of such a character that ordinary care required or authorized him to desist and he did desist from performing the labors incident to his occupation; in such circumstances total disability exists." Cato v. Aetna Life Insurance Company (1927), 164 Ga., 392, 138 S. E., 787, 791.

The case of Aetna Life Insurance Company v. Wells, 254 Ky., 650, 72 S. W. (2d), 33, is very much in point. In that case the plaintiff, Wells, sustained a hernia while unloading some heavy steel while in the employ of the North East Coal Company, which company held a group policy with the insurance company. He was treated by the company's doctor and returned to work as a "sand dryer," a lighter job. Soon afterwards, while handling a tub of sand, he received a severe jerk and was badly ruptured. Again he was laid off for about a month, and then returned to work, where he did nothing but direct his boy, who actually did the work. His doctor testified that he was totally and permanently disabled. The testimony for the defendant insurance company contradicted this evidence to some extent. The case was submitted to the jury, which found for Wells. The Kentucky Court of Appeals affirmed the judgment.

■ No question is raised on the subject of whether he should have been required to undergo an operation. It was held in Tittsworth v. Ohio National Life Insurance Company, 6 Tenn. App., 206, that a person will not be required to undergo an operation that will endanger his life. See, also, Jefferson Standard Life Insurance Company v. Hurt, 254 Ky., 603, 72 S. W. (2d), 20.

"Person insured under group disability policy held not required to undergo operation to remove hernia to recover benefits of policy." Aetna Life Ins. Co. v. Wells, supra.

It results that the assignments of errors will be overruled, and the judgment will be affirmed. A judgment will be entered in this court for $2,000 and interest from June 11, 1934, to the present, together with the cost of the cause, in favor of Temples and against the insurance company and the surety on its appeal bond.

## Supplemental Opinion.

■■ In this cause since filing our original opinion our attention has been called to a fact that we had overlooked in preparing our original opinion, that is, we stated that the chancellor had decreed that complainant, Temples, recover $2,000, whereas the chancellor rendered a decree on June 11, 1934, in favor of complainant, Temples, for $2,000, with interest from the date of the filing of the original bill in this cause, April 11, 1932, which interest amounted to $260, and therefore his decree was for a total of $2,260 and we are asked to correct the matter and have the proper judgment entered. In this we think he is correct, as interest on a policy of life insurance is allowable as a matter of law from the date when payable. Knights of Pythias v. Allen, 104 Tenn., 623, 58 S. W., 241; Foster v. Illinois Travelers' Home Insurance Company, 156 Tenn., 436, 300 S. W., 7; Dushan v. Metropolitan Life Insurance Company, 14 Tenn. App., 422, 434. And, when the jury returns a verdict without adding interest, the court may allow and compute the interest. Knights of Pythias v. Allen, supra. We, of course, cannot allow more interest than allowed by the chancellor, as Temples has not appealed or assigned error.

It results that our former opinion will be modified so as to allow the interest from date of the filing of the bill, as decreed by the chancellor, and a decree will be entered in this court for $2,260 and interest thereon from June 11, 1934, to the present.

Faw, P. J., and DeWitt, J., concur.