WILFORD RODERICK, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—98 S. W. (2d) 983.

St. Louis Court of Appeals. Opinion filed December 8, 1936.

*Edgar & Banta, Fordyce, White, Mayne & Williams* and *R. E. La Driere* for appellant.

*Samuel Richeson* for respondent.

BENNICK, C.—This is an action by plaintiff, Wilford Roderick, to recover from defendant, Metropolitan Life Insurance Company, certain total and permanent disability benefits alleged to be due him under a policy of group insurance issued by defendant to the St. Joseph Lead Company for the benefit and protection of the latter's employees of whom plaintiff was one until the time of the termination of his employment on December 23, 1930.

The disability clause of the policy provided that upon receipt at its home office in New York City of due proof that any employee, while insured under the policy, and prior to his sixtieth birthday, had become totally and permanently disabled as the result of bodily injury or disease so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the company would waive the payment of further premiums as to such employee, and six months after receipt of such proof, and in lieu of the payment of insurance at his death, would commence to pay monthly installments of benefits computed as to number and amount upon the basis of the amount of insurance in force on the life of the employee, such payments to continue within the limits of the coverage of the policy for so long as the employee's total and permanent disability should itself continue.

Plaintiff was concededly insured under the policy in the sum of $3500, at which figure, in the event he sustained a case of total and permanent disability within the coverage of the policy, he was en-

titled to receive a maximum of eighty-eight monthly installments of benefits of $44.66 each.

In his petition plaintiff counted upon the fact that at and prior to the date of the termination or his employment by the lead company he had become totally and permanently disabled within the meaning and coverage of the policy so as to be entitled to receive the monthly benefits provided for therein.

The answer was a general denial, coupled with a specific denial that plaintiff was totally and permanently disabled within the purview of the policy; that the policy was in force and effect on the date of the accrual of plaintiff's disability; and that plaintiff had submitted due proof of disability as was required of him under the provisions of the policy.

Following a trial to a jury, a final judgment was entered in favor of plaintiff, and against defendant, in the sum of $580.58, the aggregate of thirteen installments of benefits. Defendant's appeal to this court has followed in the usual course.

The chief insistence on defendant's part is that the court erred in refusing its requested instruction in the nature of a demurrer to all the evidence. Its point is that the evidence adduced at the trial did not serve to show total and permanent disability as plaintiff claimed, but that even though a contrary view should be taken of the evidence, plaintiff was nevertheless barred from a recovery because of the fact that he had not resorted to a surgical operation in order to relieve or minimize his disability.

That plaintiff's evidence made out a case of total and permanent disability within the meaning of the policy is not to be seriously questioned if we disregard for the moment the idea that his disability, which was otherwise shown to exist, might perhaps have been removed or lessened by a surgical operation. Dr. J. P. Yeargain, who was plaintiff's attending physician, testified that plaintiff was suffering from a gall bladder condition which not only rendered him unable to perform manual labor, but which would in fact be aggravated if he should attempt to perform manual labor. By way of questioning the substantial effect of plaintiff's evidence, defendant endeavors to make something of the fact that Dr. Yeargain testified not so much from records as from his memory or personal recollection of the case, and in the course of his cross-examination admitted the possibility of mistake in his diagnosis. It is enough merely to point out that while the matters thus suggested by defendant might undoubtedly have been taken into account by the jury in determining the weight to be accorded the doctor's testimony, they obviously did not serve to destroy its probative force and value, and for our purposes on appeal, having been believed by the jury, it is to be taken as having established the truth of the facts to which the doctor testified.

So the question before us actually resolves itself into one of whether, conceding that plaintiff was shown to be totally and permanently disabled within the meaning of the policy unless he underwent an operation to relieve himself of the condition which had brought about his disability, he was nevertheless to .be precluded from a recovery in this action because he had not submitted to such an operation.

The basis for defendant's present insistence is to be found in Dr. Yeargain's testimony to the effect that "plaintiff will probably get worse unless there is something done to prevent it by way of surgical interference in the form of an operation, which is a major operation, but the danger is not so great;" that "his condition would be aggravated unless he was operated on, and that an· operation might cure him;" and that "if it was a successful operation he would be able to return to work."

Regardless of the testimony of the doctor with respect to the possibility of a cure through a surgical operation, we think that defendant now finds itself in no very good position to urge that plaintiff should be barred from a recovery because he had not had such an operation as the doctor had in mind. We say this for the reason that in that small number of reported cases wherein claimants for disability benefits have been denied recovery because of the fact that they had not submitted themselves to operations in order to minimize their disability, the denial of recovery has usually been put upon the ground of estoppel, that is, that they were estopped to claim benefits for a disability which they might have cured and removed if they had been willing to comply with the course of treatment prescribed for them by their physicians. In this case, however, there was no showing that Dr. Yeargain or any other physician had ever suggested to plaintiff that he should have an operation for his gall bladder trouble, and so there was no proof of a refusal on his part, and consequently no basis for defendant's present claim of estoppel or its legal equivalent. In fact defendant set up no such defense in its answer, and such testimony as came into the case respecting the possibility of relief through an operation was brought out only incidentally as bearing upon the question of whether work would aggrevate plaintiff's condition as it then stood.

But aside from the fact that defendant raised no issue below regarding any duty on plaintiff's part to have attempted to relieve his disability by· a surgical operation before seeking to recover the benefits provided by the policy, we think the situation is actually one where there was no such duty incumbent upon him, at least in a case such as this, where the operation would unquestionably have been one of major proportions and attended with a substantial element of risk and danger.

To get at the true legal situation we must constantly have full regard for the fact that this action is not one in tort for damages, but instead is on a contract which contains certain specific terms and provisions embracing what was in the contemplation of the parties at the time the contract was entered into. In other words, an insurance policy is nothing but a contract which definitely fixes the insurer's liability and the insured's right to recover thereon. It must follow, therefore, that in a case such as this, the insurer's liability for and the insured's right to disability benefits must not only be determined solely from the language of the policy itself, but with that language liberally construed in favor of the insured, if it is perchance ambiguous and susceptible of more than one interpretation. [Moss v. Metropolitan Life Insurance Co. (Mo. App.), 84 S. W. (2d) 395; Rickey v. New York Life Insurance Co., 229 Mo. App. 1226, 71 S. W. (2d) 88.]

Now it is not contended that the policy in suit expressly provides that one who claims disability benefits thereunder must first submit himself to a surgical operation in order to relieve or minimize his disability, but defendant rather suggests that as a fundamental principle of right and justice such a claimant should be compelled, as a condition precedent to his right to recover, to show that he had done everything which a reasonably prudent man would have done under the same or similar circumstances towards curing his ailment.

The obvious answer to this is that the policy does not purport to insure merely against incurable disability, but against total and permanent disability, whether curable or incurable, for so long as the disability continues within the limit fixed by the policy. Had defendant at the time of the issuance of its policy desired to limit its liability to incurable disability only, it would have had the right to have done so, but it did not do so, and we can only conclude therefore that the duty to submit to an operation was not within the contemplation of the parties when the contract was entered into.

It may in all probability have been taken for granted by the parties that any person insured under the policy would, from motives of self-protection and self-preservation, obtain whatever medical or surgical treatment his particular case might reasonably require and his purse permit, but this matter was left open in the contract. It was a matter which the employees of the lead company were left to determine for themselves, and if, through apprehension, financial embarrassment, or for any other cause, an employee sustaining a disability otherwise compensable under the policy should determine not to submit himself to an operation in order to relieve against the disability, his refusal could avail defendant nothing, since he is under no contractual obligation to so submit and

thereby incur expense and risk his life so that defendant might be relieved of its liability to him under its policy. [Volunteer State Life Insurance Co. v. Weaver, 232 Ala. 224, 167 So. 268; Maresh v. Peoria Life Insurance Co., 133 Kan. 191, 299 Pac. 934; Jefferson Standard Life Insurance Co. v. Hurt, 254 Ky. 603, 72 S. W. (2d) 20; Aetna Life Insurance Co. v. Wells, 254 Ky. 650, 72 S. W. (2d) 33; Prudential Insurance Co. of America v. Brasier, 260 Ky. 240, 84 S. W. (2d) 43; Ford v. New York Life Insurance Co., 176 S. C. 279, 180 S. E. 37; Tittsworth v. Ohio National Life Insurance Co., 6 Tenn. App. 206; Temples v. Prudential Insurance Company of America, 18 Tenn. App. 506, 79 S. W. (2d) 608.]

As a corollary to its contention on demurrer to the evidence, defendant makes the further point that plaintiff's principal instruction No. 1 was erroneous for having omitted any provision for a verdict for defendant in the event the jury found that the illness of plaintiff was curable by an operation and that plaintiff had taken no such step to effect a cure.

With no such duty reposing upon plaintiff under the policy, to say nothing of the fact that no such issue had been raised by defendant in its answer, it is at once apparent that the instruction could not be held erroneous on account of the omission of any reference therein to the question of whether plaintiff's disability could have been relieved or minimized by an operation.

In urging the error in the instruction defendant has relied chiefly upon the case of Perkins v. Equitable Life Assurance Society (Mo. App.), 73 S. W. (2d) 415, which was likewise an action for disability benefits under an insurance contract, and in which the trial court was convicted of error for having given no instruction which contained a mention of the question of estoppel growing out of the plaintiff's failure to have submitted himself to an operation for the purpose of relieving his disability.

As we read it, however, the Perkins case is no authority for defendant's present insistence. There but a slight operation was involved; here a major operation would have been required. There the plaintiff's physician had advised the operation; here there was no evidence of any such recommendation. There the issue of estoppel had been set up in the defendant's answer, and both sides had treated the question as in the case throughout; here no such issue was raised in the answer, and the case was not tried upon any such theory. There the defendant, when it observed that the plaintiff's instruction had made no mention of estoppel, sought, but was refused, an instruction of its own conforming to the evidence in the case and covering the question of estoppel as pleaded; here defendant sought no such instruction of its own, but rather had the jury merely charged that by total and permanent disability was meant

such disability as did then and would ever prevent plaintiff from performing any work or engaging in any occupation for compensation or profit.

With these striking points of dissimilarity noted between the pleadings and evidence in the two cases, the Perkins case can obviously furnish no comfort to defendant in urging the error claimed to have been present in plaintiff's instruction; nor, for that matter, though it did treat the defense of estoppel as applicable to the particular facts of that case, does it even constitute authority for saying that such a defense would lie in a case such as the one at bar, wherein to have relieved or minimized the disability from which plaintiff was suffering would have required a major operation attended with a substantial element of risk and danger.

Finally defendant assigns error to the giving of plaintiff's instructions Nos. 3 to 7, inclusive.

By instructions Nos. 3 to 6, the court simply defined the meaning of the terms "total disability," "engaging in any occupation," "performing any work," and "for compensation or profit," as the same were used in the disability clause of the policy. The definitions so given were correct under the decisions which have been heretofore rendered construing the very disability clause in question, nor does defendant make any point to the contrary.

By instruction No. 7, the attention of the jury was directed to the specific case before them, the purpose of the instruction being to tell the jury that in determining the question of whether plaintiff was totally and permanently disabled so as to be entitled to recover the benefits provided by the policy, they were to understand that the character of disability they were required to find was only such as was within the purview of the definitions contained in the preceding instructions.

Defendant concedes that plaintiff was fairly entitled to an instruction such as his instruction No. 7, but insists that the giving of a series of instructions based upon the same general subject matter unduly emphasized the point plaintiff was endeavoring to make to defendant's prejudice. We think this contention is unavailing. Plaintiff was entitled, not only to have the disability clause of the policy correctly defined, but also to have that definition applied to the precise question of whether plaintiff was himself disabled within the meaning of the policy, and in accomplishing this proper purpose there was no harm done to defendant's rights by reason of the fact that the court employed a series of five separate instructions instead of combining the whole matter in one or two instructions. In fact, the use of a short, separate instruction for the definition of each term of the policy material to the inquiry no doubt tended greatly to clarify the situation before the jury, and such a

course, where it does not involve unnecessary repetition, should always be commended and not condemned.

It follows that the judgment rendered by the circuit, court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.