## SHANE v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.—118 S. W. (2d) 571.

Middle Section. February 19, 1938.

Petition for Certiorari denied by Supreme Court, July 2, 1938.

Walker & Hooker and William C. Sugg, all of Nashville, for plaintiff in error Mrs. Shane.

Seay, Stockell & Edwards, of Nashville, for defendant in error Insurance Co.

CROWNOVER, J. This is an action to recover $1500, "total and permanent disability" benefits under a group policy, the master policy having been issued and delivered to the employer, E. I. DuPont de Nemours & Company, and the certificate to the employee, Mildred Shane, the plaintiff in this suit.

It was averred in the declaration that the insured (Mildred Shane) became totally and permanently disabled on account of having developed tuberculosis while this policy was in force, and that she had given due notice and proof of her disability to the insurance company, but payment had been refused.

The defendant insurance company denied liability and pleaded nil debet and non assumpsit.

The case was tried by the judge and a jury. At the close of the plaintiff's evidence the defendant moved the court for peremptory instructions in its favor, which motion was sustained; the jury was instructed to return a verdict for the defendant, which was done, and judgment was entered dismissing the plaintiff's action.

The plaintiff filed a motion for a new trial, which was overruled, and she appealed in error to this court and has assigned as error the court's action in directing a verdict for the defendant and dismissing her suit.

Mrs. Mildred Shane (formerly Mildred Drake) is a married woman of the age of twenty-three years. She first went to work for E. I. DuPont de Nemours & Company at their rayon plant in Old Hickory, Tennessee, in August, 1930, at the age of seventeen years, having left school in the ninth grade to go to work for this company. She was laid off from work in May, 1931; resumed work in August or September, 1931, and worked almost two years. She was married during this time. In June, 1933, she stopped work because she was going to give birth to a child. She was hired again on January 24, 1934.

When she had worked for the company for a year continuously, after this last hiring, an insurance certificate was issued to her, on January 24, 1935, under the company's group policy, insuring her life for $1500 and providing for certain total and permanent disability benefits. At this time it was the company's custom to have such a certificate issued after an employee had been with it one year.

On May 7, 1935, she was required to have a physical examination, a periodical physical examination being required by the company, and it was discovered by the physician that she had tuberculosis, and she was advised to go to the Davidson County Tuberculosis Hospital for treatment.

She went to the Tuberculosis Hospital and remained there a month, when she left and went to the home of her mother and remained there about sixty days. She then returned to the hospital and stayed there about sixty days, when it was necessary to transfer her to the Nashville General Hospital for a Caesarean operation. On September 30, 1935, soon after the operation, she went to her mother's home and stayed there about five months, returning to the Tuberculosis Hospital in February, 1936. She remained in the Tuberculosis Hospital about three months, then went to her husband's home where she now lives.

She does a little light house work at her home, but is really not able to do any work.

On January 18, 1936, she consulted Dr. S. T. Ross, who had x-ray pictures made of her lungs and examined her otherwise. He testified at the trial that at this examination he found that she had tuberculosis of both lungs but there were no cavities in the lungs.

On March 4, 1937, just before this trial, he again examined her, and he testified that then he found there was a cavity in one lung and "inactivity" in the other; that it was his opinion she would never be cured of the disease.

The provisions of the certificate and also the master policy as to disability benefits are as follows:

"In the event that any Employee while insured under the aforesaid policy and before attaining age 60 becomes totally and per-

manently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such Employee, under the policy, pay equal monthly Disability-instalments, the number and amount of which shall be determined by the Table of Instalments below. The amount of insurance referred to in this provision is the total amount shown in the Insurance Schedule set forth in the Employer's Insurance Plan on the second page hereof for an Employee having the same length of continuous service as the totally and permanently disabled Employee. . . .

"The Society shall have the right at reasonable intervals to require proof of the continuance of such disability. If the Employee fails to furnish satisfactory proof, or if it appears at any time that such disability has been terminated, no further Disability-instalments will be paid on account thereof. . . ."

The plaintiff in error, Mrs. Shane, assigns as error the court's action in peremptorily instructing the jury to return a verdict for the defendant insurance company, instead of submitting the question of her disability to the jury.

It is insisted by the insurance company that she was not totally and permanently disabled on May 7, 1935, when she was discharged by the rayon company and her insurance policy automatically cancelled.

The insurance company contends that the question at issue is whether she was totally and permanently disabled in May, 1935; that the evidence shows that on that date she had a light case of tuberculosis which might have been cured if she had obeyed the doctor's instructions and had remained in the Tuberculosis Hospital; that her present state of total disability is the result of her neglect to procure proper medical attention, and not the natural result of the disease; and that it was her duty to submit to medical treatment to improve her physical condition, which she has failed to do.

There is a presumption that she was in good health at the time the policy was issued. 37 C. J. 616, sec. 411.

The evidence is that on May 7, 1935, it was found that she had developed tuberculosis. Her condition appears to have grown steadily worse. Dr. Ross examined her on January 18, 1936, about eight months after the disease was first discovered, and he found she had active tuberculosis in both lungs, but no cavities in the lungs. He examined her again, in March, 1937, and found a distinct cavity in one lung, and her condition much worse. He then considered her totally and permanently disabled.

■ The extent of Mrs. Shane's disability on May 7, 1935, whether total and permanent, is a question of fact, and should have been submitted to the jury.

Whether the insured's disability is total and permanent is ordinarily a jury question. Prudential Ins. Co. v. Davis, 18 Tenn. App. 413, 78 S. W. (2d) 358; 6 Cooley's Briefs on Insurance 5614; Metropolitan Life Insurance Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 855.

The doctor, on cross-examination, was asked the question whether in his opinion, considering the history of Mrs. Shane's case and the x-ray pictures (some of them made by other doctors), she could have been cured if she had remained in the Tuberculosis Hospital when she first went there in May, 1935, and he answered that he thought "the chances are she would have been cured"; that "she would have had a good chance to be cured." However, he went on to say: "There is no way of saying positively that she would have gotten well, because 100% of them don't get well." This evidence was certainly not sufficient to authorize the trial judge to withdraw from the jury the question whether she was totally and permanently disabled in May, 1935.

All the facts and circumstances as to her condition before and after her discharge should have been submitted to the jury and let the jury determine whether she was totally and permanently disabled while she was an employee of the rayon company.

The insurance company insists that her present state of health is the result of lack of medical attention, and that it was her duty to procure proper medical attention.

■ The insurance under a group policy is terminated when the servant ceases to be an employee. A contract for personal service is terminated by the death, insanity, sickness, or permanent disability of a servant, where he is unable to perform his contract, unless the parties contract to the contrary. American Nat'l. Insurance Company v. Jackson, 12 Tenn. App. 305.

But if she contracted tuberculosis and became totally and permanently disabled while an employee, then she may collect the disability benefits. Temples v. Prudential Ins. Co., 18 Tenn. App. 506, 79 S. W. (2d) 608.

■ ■ But under the terms of the policy, above quoted, the insurance company has a right to require proofs of the continuance of the disability, and if it appears that such disability has been terminated, no further benefits will be paid. Hence the burden of proof to show that the total and permanent disability occurred while she was an employee and that the same continued up to the bringing of this suit, is on the plaintiff.

It was not stipulated in the policy that the insured should obtain medical treatment if necessary. It was a matter which the insured was left to determine for herself. She was under no ex-

press contractual obligation to do so. Tittsworth v. Ohio Nat'l. Life Ins. Co., 6 Tenn. App. 206, 209; Temples v. Prudential Insurance Co., 18 Tenn. App. 506, 513, 79 S. W. (2d) 608.

■ While in personal injury and workmen's compensation cases it is the duty of the person injured to procure medical and surgical attention, as it affects the amount of the recovery, the right to recover insurance benefits, where the insured is totally and permanently disabled, cannot be affected by the failure to have medical attention. 6 Cooley's Briefs on Insurance, 5228, 5229.

However, from the evidence in this case it does not appear that her present physical condition is the result of failure to stay at the hospital. No evidence was introduced by the insurance company to show that it was injurious to her health for her to stay at her home, or that she was not given there the care and attention that she would have received at the hospital. It is not shown in the record that she had no medical attention or that her present condition was caused by the lack of proper medical attention.

The question at issue in this case is, whether Mrs. Shane was totally and permanently disabled at the time she was discharged, on May 7, 1935, and that condition continued. If this was the case, the company is liable. If not, she cannot recover. Patey v. Metropolitan Life Ins. Co., 19 Tenn. App. 634, 93 S. W. (2d) 1271. We think that there was enough evidence to carry the case to the jury; hence the assignment of error must be sustained, the judgment reversed, and the cause remanded to the Circuit Court of Davidson County for a new trial. The costs of the appeal are adjudged against the insurance company, but the adjudication of the costs of the lower court will await the final determination of the case.

Faw, P. J., and Felts, J., concur.