THOMAS E. KANE, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—73 S. W. (2d) 826.

Springfield Court of Appeals.   June 18, 1934.

Rehearing denied July 30, 1934.

*Leroy A. Lincoln* and *Oliver & Oliver* for appellant.

*Finch & Finch* and *Rush H. Limbaugh* for respondent.

SMITH, J.—This is a suit to recover total and permanent disability benefits under certificates of insurance issued by defendant to plaintiff as an employee of the St. Louis-San Francisco Railway Company under a group policy of insurance. The master policy was issued by the defendant on the employees of the St. Louis-San Francisco Railway Company (hereinafter called Frisco) on August 1, 1923. Plaintiff was then an employee of the Frisco, holding the position of chief train dispatcher at Chaffee, Missouri. On the same day the master policy was issued defendant applied for and was granted $5,000 of insurance. This was issued by certificate dated August 1, 1923, for $4,000, and an additional certificate increasing such insurance $1,000. On February 1, 1925, the defendant issued a certificate increasing the insurance carried by plaintiff $4,000. This made a total of $9,000 of insurance carried by the plaintiff, the premiums on all of which had been paid and all of which was in force up to December 31, 1930.

The master policy provided for the payment of total and permanent disability benefits to employees carrying insurance under that policy. The chief provisions relative to total and permanent disability were also set out in the original certificate issued to the plaintiff. These provisions are as follows:

"Total and Permanent Disability Benefits.

"Any employee shall be considered as totally and permanently disabled who furnishes due proof, that, as the result of bodily injury suffered or disease contracted while his insurance was in force and prior to his sixtieth birthday, he is permanently, continuously and wholly prevented thereby from performing any work for compensation or profit.

"Upon receipt of due proof of such disability, the Metropolitan Life Insurance Company will pay to such employee, in lieu of the payment at death of the said insurance on the life of such employee, equal monthly installments based on the amount of insurance in force on such employee at the date of receipt of proof of such disability, as shown in the following tables.

| Amound of Insurance | No. of Monthly Installments | Amount of Each Installment |
|---|---|---|
| $1,000.00 | 20 | $ 51.04 |
| 2,000.00 | 40 | 52.50 |
| 3,000.00 | 60 | 54.00 |
| 4,000.00 | 60 | 72.00 |

| 5,000.00 | 60 | 90.00 |
| 7,000.00 | 60 | 126.00 |
| 9,000.00 | 60 | 162.00 |

"Such installment payments will be made only during the continuance of such disability."

There is no controversy over the pleading in the case. The principal complaint is over the above quoted part of the policy. The plaintiff contends that he was totally and permanently disabled while the policy was in full force and effect before he was sixty years of age.

The case was tried to a jury on May 31, 1933, and a verdict returned in favor of plaintiff for $3196.02. Motions for new and in arrest of judgment were filed and overruled, and the defendant has appealed to this court.

Defendant's position is that this case should be reversed outright for the reason that plaintiff not only failed to prove his case, that he was totally and permanently disabled so as not to be able to do any work for compensation or profit, but affirmatively showed that he was able to engage in work for profit and had continuously done so for two and a half years immediately prior to the trial.

There is not much dispute over the facts in the case. There is no denial of the issuing of the policies sued on. There is no denial in the brief and argument of the amount due the plaintiff, if in fact anything is due under the policy and under the facts. There is no question but that the plaintiff was an employee of the Frisco as a train dispatcher, and that he had held that position with the Frisco for nearly twenty years, and that that had been his work for several years prior to his employment by the Frisco. He had not done any work except as train dispatcher and telegrapher since he was about seventeen years old, and that he was discharged from the service as chief dispatcher by the Frisco on August 30, 1930, because of his deafness. He was totally deaf in one ear, his right ear and having only one-twentieth or five per cent of his capacity for hearing with his left ear. There was some question of his age at the time of his discharge. A clerk or helper in the hospital said that when he reported at the hospital for examination in 1930 that he gave his age at that time at sixty-five years. While he was on the stand he said that when he was discharged he was fifty nine years old, and he produced what purported to be a family record from an old Bible which corroborated his statement as to his age. The jury passed on that point, and no question as to his age is raised before us. There is no question here that proof of loss was not made as provided by the policy.

The first four assignments presented in defendant's brief have to do with the construction of the disability clause of the policy. The defendant contends that the demurrer should have been sustained,

because the contract is plain and unambiguous, and that according to the testimony, and especially his own testimony, the plaintiff was actually engaged in another occupation for compensation or profit, and that it was the court's duty to construe the contract sued upon and apply it to the undisputed facts.

The facts upon which defendant bases its contention are, that after the plaintiff was discharged he had ability to and did look around trying to find a position or employment in which he could engage for compensation or profit, and that on December 1, 1930, after he had been taken out of the railroad service in August, he bought a pool hall in Chaffee, Missouri, and paid $800 cash for it. This hall had four tables in it, but only three of them were used. At the front of the room there is a small stand at which cigars, tobacco, candy and chewing gum are sold. The plaintiff stayed around this hall and operated it himself with the the assistance of a boy to clean up the premises and to rack the balls on the tables and to do most of the routine labor about the place. The plaintiff was the managing heard of the business, and to use his own expression was ''the boss'' of the place. The plaintiff was the only person in charge of the hall from ''an hour to an hour and a half during the noon hour and from an hour to an hour and a half during the evening meal hour.'' This business was continuously operated since December 1, 1930, up to the date of the trial, May 31, 1933. The testimony shows that in the winter months of 1930-1931, the business made a clear profit of from $10 to $12 per day but thereafter the income and profit had decreased until the business was not more than making expenses at the date of trial. The plaintiff said he had hopes that it would be better if general business conditions improved. One witness for defendant sent by defendant to visit the pool room said he had visited the place of business a short time before the trial about the noon hour and that the plaintiff was in charge of the pool room and sold him some tobacco, that he was selling soda, racking the balls and taking money. Some of the doctors who had examined the plaintiff said that while his hearing was so defective as to prevent his following his life work that of train dispatcher, that there were other occupations that he might be able to follow. The plaintiff himself admitted that he stayed around the pool hall and occasionally played a game of pool, and sometimes collected the fee for playing, and that while his hired boy was away for his meals that he looked after the tables and the sales, but most of the time there was nothing to do during those hours, and that he did not rack up the balls a dozen times a week, and that other times the boy ran the pool hall; racked up the balls and took in the money.

Several witnesses testified that the plaintiff was not actively engaged in running the pool hall, but left the care of the tables, the care of the cigar and candy stands, with the collection of the money

from the sales and from the pool tables to the boy who was there practically all the time.

The plaintiff's contentions is that while the plaintiff owned the pool hall he was not running it himself and that what he received from the operation of the hall was profit from an investment and was not wages or income for work actually done himself.

The evidence is abundant that all the plaintiff had ever done since he was seventeen years old up to the time of his discharge had been to work as a telegrapher and train dispatcher. He had only a limited education, and had no training in any business except as above stated. He had never done any manual labor, and he could not hold out to work over thirty minutes in his garden or yard. He had never done any farm work and did not have any sales experience. In the interim from the date of his discharge up to the time of buying the pool room, he tried to get other employment with the Frisco and with other employers, but on account of his physical defects and his age he could not do so. The superintendent in charge of the division of the Frisco where plaintiff had worked said he did not know of any place with the company where the plaintiff could work unless it be clerical work and that the plaintiff could not be placed in a clerical position, even if he were qualified, because it is all based on seniority, and he had no seniority as a clerk.

This record shows that the plaintiff was a man well fitted for the work he had followed throughout his lifetime. The record also shows that he was unfitted for any other employment, except the employment he had around this pool room, or at least the record is barren of any evidence as to his qualifications for any particular employment for compensation, except the operation of this pool room, if it can be said under the facts here that this is such employment.

The policy contains these words pertaining to total and permanent disability, "Any employee shall be considered as totally and permanently disabled who furnishes due proof that . . . he is permanently, continuously and wholly prevented thereby from performing any work for compensation or profit."

This language clearly shows that disability is a matter of proof. The proof in this case shows, and the defendant does not try to show otherwise, that the plaintiff because of his deafness is permanently, continuously and wholly prevented by reason of such deafness from performing for compensation or profit any work in his life profession, that of telegrapher or train dispatcher. The question then is, whether or not he comes within the provisions of this policy, since he is able to walk and talk and still has his intellect, with ability to think and and direct others in and around his shop and with ability to invest his earnings, and perform certain nominal jobs about his business.

The defendant cites several Missouri cases in support of its contention that the court should have directed a verdict for the defend-

ant, and that this court should reverse this judgment outright because the proof shows plaintiff was able and did do other work. Among these cases are Wendorf v. Mo. State Life Ins. Co., 318 Mo. 363, 1 S. W. (2d) 99; State ex rel. v. Cox et al., 322 Mo. 38, 14 S. W. (2d) 600; State ex rel. v. Trimble et al., 306 Mo. 295, 309, 267 S. W. 876; Paul v. Mo. State Life Ins. Co., 52 S. W. (2d) 437, and May Martin v. Travelers (Mo. Sup.), 276 S. W. 380. The defendant also cites the case of Prudential Insurance Company v. Wolfe, 52 Fed. (2d) 537.

We have read each of the above cases, and without taking them up separately, we think the facts in those cases are distinguishable from the fact here, and none of them is authority here in passing on what constitutes total and permanent disability.

We are cited to several foreign cases that seem to hold that a person must be physically and mentally helpless so as to be unable to perform any personal work and incapacitated to give any directions in business affairs before he is entitled to recover under a policy such as this.

We think the narrow rule contended for by defendant, and seemingly supported by some foreign authorities, is not in harmony with the rule in Missouri, and in the majority of the states of this country. We shall not write at length setting out what various opinions have held under the different facts, but we have reached the conclusion after reading many cases, that the general holdings under facts similar to these and under contracts worded similar to the one under consideration here, are, that the insured is totally and permanently disabled, so as to bring him within the provisions of the policy, when he is no longer able to perform the usual, customary and substantial duties of his own occupation, and when, in view, of the insured's age, training, experience, education and physical condition there is no work or occupation in which he can engage for profit. And that these are questions of fact to be determined by the jury under proper instructions from the court. We think we are sustained in this conclusion by the holdings of the courts of this State and of other states, some of which cases are as follows: Wall v. Continental Casualty Company, 111 Mo. App. 504, 86 S. W. 491; Foglesong v. Modern Brotherhood, 121 Mo. App. 548, 97 S. W. 240; Katz v. Union Central Life Ins. Co. (Mo. App.), 44 S. W. (2d) 250; Hurt v. Equitable Life Assurance Society (Mo. App.), 53 S. W. (2d) 1101; Hardie v. Metropolitan Life Ins. Co. (Mo. App.), 7 S. W. (2d) 746; Medlinsky v. Metropolitan Life Ins. Co., 263 N. Y. Supp. 179; Manuel v. Metropolitan Life Insurance Co. (La.), 139 So. 548; McCutchen v. Pacific Mutual Life Ins. Co., 151 S. E. 67.

We think, and hold, that under the facts in this case, it was a question for the jury to determine as to whether the plaintiff was totally and permanently disabled from pursuing an occupation for

compensation and profit, and this, too, in view of the fact that he did perform some small acts of labor and did in a way direct the management of his pool hall. To hold, as defendant contends, that there must be a strict literal compliance with the wording of such a contract, and that the proof must show the insured unable to even give directions regarding his affairs and unable to perform the most trivial acts of exertion in connection with any business for profit, would render worthless possibly ninety-nine per cent of all such contracts. The courts of our State have never gone that far, and we shall not in this instance.

Defendant in its original assignments complained of error in giving instructions Nos. 1 and 2 for plaintiff, but in its brief and argument does not mention these assignments, so they are presumed to be abandoned, and we so treat them. [Hurt v. Equitable Life Assurance Soc., 53 S. W. (2d) 1101; Sitts v. Daniel (Mo. App.), 284 S. W. 857; Hall v. Morrin (Mo. App.), 293 S. W. 435.]

The final complaint is that this case should be remanded for a new trial for the error of the trial court in excluding the testimony elicited on cross-examination by defendant of plaintiff's medical witnesses. The cases cited and relied on by defendant under this point are Epstein v. Railroad, 143 Mo. App. 135, 122 S. W. 366, and the same case, 250 Mo. 1, 156 S. W. 699. As we read the Epstein case the question there involved related to the question of privilege between physician and patient, and whether that had been waived by the patient. That is not the question here. The doctors here were asked, and not permitted to testify, concerning other deaf persons that had been successful in business. Certainly it was not reversible error to exclude such testimony. Also the court excluded expressions of opinion by these doctors as to plaintiff's ability to perform other occupations, where the doctors had shown no knowledge of plaintiff's earlier history, his experience, education and life work, and where the doctors were not advised as to those facts by the questions asked. It was not reversible error to rule against such questions and answers.

Defendant also complains of the exclusion of certain parts of the deposition of one Dr. Hope, whose testimony was originally taken by the defendant. On direct examination in the deposition Dr. Hope was asked about other deaf persons and also whether Kane could engage in other occupations. Consequently, on cross-examination in the taking of the deposition, Dr. Hope was examined as to the subjects covered on direct examination. At the trial the court excluded the direct testimony of Dr. Hope as to other deaf persons and as to his opinion as to Kane's ability to perform other work. Plaintiff did not read that portion of the cross-examination relating to these incompetent subjects. Defendant objected and sought to read that portion of the cross-examination, and then objected to the

656

exclusion of a portion thereof. It should be quite apparent that due to the method of taking deposition, there being no rulings on the evidence at the time, it is necessary to cross-examine on all subjects covered on direct examination, even though objected to on direct examination as incompetent and inadmissible. Then, when a portion of the direct examination is excluded, it is proper to exclude the cross-examination relating thereto, and it should not be and is not the rule that the cross-examination relating to the incompetent subject-matter is admissible simply because the party doing the cross-examination had to examine on that subject at the time in order to protect his interest should the court hold the matter covered on direct to be admissible. The ruling of the trial court in excluding the cross-examination was not reversible error.

Finding no reversible error the judgment is affirmed. *Allen, P. J.*, and *Bailey, J.*, concur.