ALBERTA SPIGENER, RESPONDENT. v. GREAT WESTERN INSURANCE CO., APPELLANT.—107 S. W. (2d) 847.

Kansas City Court of Appeals. December 17, 1937.

*Mrs. Sylvester Wells* and *Hume & Raymond* for respondent.

*J. K. Owens* for appellant.

REYNOLDS, J.—This appeal comes to us from the circuit court of Jackson county at Independence. The case is an action on a policy of accident insurance issued by the defendant to one Henry J. Spigener as the insured thereunder, in which the plaintiff (his daughter) was named as the beneficiary.

On the trial in the court below, judgment went for the plaintiff in the sum of $500; and the defendant has appealed.

The plaintiff's amended petition, on which the case was tried, alleges that, on March 16, 1934, the defendant executed, issued, and delivered to one Henry J. Spigener its noncancellable, dividend policy, by the terms of which the defendant agreed that, should Henry J. Spigener die while said policy was in force, solely from bodily injuries, effected directly and independently of all other causes through accidental means, the defendant would pay to the plaintiff, the named beneficiary in said policy, the sum of $500; that, on or about January 18, 1935, the insured accidentally fell on the steps and sidewalk of his home in Kansas City, Missouri, with great force and violence; that his brain and his nervous and circulatory systems were so shocked, bruised, contused, and injured by reason of said fall that he died from the effects thereof on January 25, 1935; that said death resulted from bodily injuries effected directly and independently of all other causes through such fall, as provided in said policy; that all premiums had been paid, and said policy was in force and effect at the time; that the plaintiff made due proof of death and did everything under the provisions of the said policy required of her to be done to entitle her to payment; that she has demanded such payment, and such has been refused by the defendant; that such refusal has been without cause and has been vexatious; and that she is entitled to a penalty in the sum of $50 and a reasonable attorney's fee in the sum of $200 by reason thereof—for which, together with the principal sum of $500, judgment was prayed.

Thereafter, the defendant filed a general demurrer to such amended petition, on the ground that it did not state facts sufficient to state a cause of action, which was overruled. Following the denial of such demurrer, the defendant filed answer, in which it admitted the issuance of the policy and denied each and every other allegation therein contained.

The policy contained, among others, the following provisions:

"In consideration (1) of the payment of a quarter-annual premium of four dollars and twenty-five cents ($4.25), and (2) of the agreements and representations contained in the application herefor, a copy of which is attached hereto and made a part hereof, and (3) of the conditions, limitations, and provisions contained herein and endorsed hereon, the Great Western Insurance Company (hereinafter called the Company) subject to all the conditions, provisions and limitations in this policy contained, hereby insures the person whose name appears on the filing back hereof (hereinafter referred to as the Insured), from 12 o'clock noon standard time, at the place where Insured resides, for a period of three months from the

date of issue shown on the filing back hereof, which period is here-inafter referred to as the premium term, and for such subsequent period terms of three months as shall be paid for in advance; at the same rate of premium, against loss resulting solely from bodily injuries effected directly and independently of all other causes through accidental means, if sustained as specifically set forth in the following sections. The injury herein defined is hereinafter referred to as 'such injury.' ''

Section 3, under the heading ''Ordinary Accidents,'' is one of the sections following in said policy, referred to, and is as follows:

''If 'such injury,' except as otherwise provided for in Section VII hereof, is sustained by Insured in any other manner than as covered by paragraphs 1 and 2 of this Section II and shall wholly and continuously disable the Insured from the date of the accident and shall, within thirty days from such date, result in one of the losses specified in this paragraph, the Company will pay for any one such loss, *in lieu* of all other indemnity, the sum set opposite injuries resulting from one accident.''

Thereafter, follows a schedule of the losses covered by said paragraph, together with the respective amounts to be paid in the event of such losses, among which is found the loss of life of the insured for which $500 was agreed to be paid. There is no contention that the loss herein was covered by paragraphs one and two, referred to, or that it came within any of the exceptions of Section 7.

There is not any contention that the policy was not in full force and effect at the time of the injuries mentioned, from which the insured afterward died, or that proof of death was not made as required by the terms of the policy.

From the record, it appears that the defendant is a life and accident insurance company engaged in the business of life and accident insurance in the State of Missouri; and it was admitted that it issued the policy in question on the life of the said Henry J. Spigener.

There is evidence tending to show that, on January 18, 1935, the insured lived at 2544 Michigan Avenue, Kansas City, Missouri; that, on the morning of that date, on leaving his residence, he fell, striking the back of his head with great force, and lay in the position in which he fell groaning with pain until assisted to his feet by others; that he was engaged at such time as janitor at the Manufacturers' Exchange Building in Kansas City and had been so engaged for a period of forty-three years; that he complained of his head hurting but went to his work; that, when he returned from work that evening, there was a large knot on his head and he complained of pain in his head; that the knot on his head was a little

larger than a small walnut; and that, thereafter, on each successive day, he went to work until January 25, when he died.

There is evidence tending to show that, during that time, he constantly complained of pain in his head. There is some evidence tending to show that, during this time, he had help in doing his work. There is evidence by fellow employees tending to show that, while he was on his work, he constantly complained of pain in his head. When he was taken violently ill on the night of January 24, 1935, he was taken to the hospital, after which he was returned to his home on the same evening, where one Dr. Caldwell was called to attend him. Dr. Caldwell was with him for about an hour when he was called to his office for a while and returned a few minutes before the insured died, about one o'clock in the morning of January 25.

There is evidence by Dr. Caldwell to the effect that the insured died from coronary thrombosis but that his death, in his opinion, was contributed to by the fall which he had received. His testimony was to the effect that a fall and injury of such character would hasten the coronary thrombosis to a termination, that such a fall would follow up the blood stream and hasten the occlusion of the thrombosis and finish up the case. The record shows that the insured died within about five hours of a week after his injury. It was testified to by Dr. C. G. Leitch, as an expert witness for the defendant, that, if the fall which the insured received should be considered a factor in his death, the death should occur within a period of one week after the injury was received.

Delphine Watkins testified that she helped the insured up at the time that he fell and struck his head; that she was living in the same house with the insured and was well acquainted with him; and that she knew where he was employed and by whom. She testified that, after she helped him up, he went on to his work and that he was complaining of great pain. She stated that he worked every day after his injury up to the date upon which he died; that he would go to his work at seven o'clock in the morning and return home about 7:30 or 8:00 o'clock in the evening; and that, on the twenty-fourth, the day before the night on which he died, he was at his work all day.

Cecil Spigener, a son of the insured, testified that the insured was sixty-six years of age at the time of his death; that he knew nothing about the accident; and that he was not at home at the time of the accident. Being questioned as to the length of time that the knot remained on the insured's head, he replied that he could not say because the insured kept right on working; that he would leave for his work about 7:00 o'clock in the morning and return about 8:00 or 9:00 o'clock in the evening; and that he worked every

day after his injury, the same as he had always worked, until the time he went to the hospital.

Lottie Spigener, a sister of the plaintiff in this case, testified that she visited her father on two occasions between January 18 (the date on which he was hurt) and January 25 (the date on which he died) and that he was on the job working at such times.

There was testimony from witness Oscar C. Moss, a fellow employee with the insured, to the effect that the insured was at work on his job all of the time after the eighteenth and up to the date on which he died. Witness Moss also testified that, after the eighteenth, the insured had help in doing his work; that he helped him at times and other boys helped him; that first one and then another helped him; and that, prior to the eighteenth, he had not helped the insured.

At the close of the plaintiff's evidence and again at the close of the whole evidence, the defendant requested instructions in the nature of demurrers to the evidence, which were by the court refused.

Upon this appeal, the defendant assigns error on the part of the trial court as follows:

"The court erred in refusing to give defendant's peremptory instruction lettered 'B,' the same being a peremptory instruction in the nature of a demurrer at the close of all of the evidence.

(a) The burden of proof was upon the plaintiff to prove, and she failed so to prove, that the insured was totally disabled in the accident of the 18th day of January, 1935, and that he was continuously disabled from the date of that accident to the date of his death, as required by the terms of the policy.

"(b) The plaintiff failed to prove that the insured's death was caused, directly and independently of all other means, through external, violent and accidental means, as provided for in the terms of the policy."

The first point made by the defendant is that the court erred in refusing to give its requested peremptory instruction in the nature of a demurrer at the close of all of the evidence.

It argues that the burden of proof was upon the plaintiff to prove, and that she failed so to prove, that the insured was wholly disabled in the accident of January 18, 1935, and that he was so continuously disabled from the date of the accident to the date of his death, as required by the terms of the policy—in support of which it cites Martin v. Travelers' Ins. Co., 310 Mo. 411, 276 S. W. 380; McDaniel v. Business Men's Assur. Co. of America (Mo. App.), 6 S. W. (2d) 337; Maupin v. Provident Life & Accident Ins. Co. (Mo. App.), 75 S. W. (2d) 593; Massachusetts Provident Association, Inc. v. Lewis, 72 Fed. Rep. (2d) 952—and that the plaintiff failed to prove that the insured's death was caused directly

and independently of all other means through external, violent, and accidental means, as provided in the terms of the policy—in support of which it cites Muller v. Mutual Ben. Health & Accident Assn., 228 Mo. App. 492, 68 S. W. (2d) 873, 1. c. 880; Phillips v. Travelers' Ins. Co. of Hartford, Conn., 288 Mo. 175, 231 S W. 947; Caldwell v. Travelers' Ins Co., 305 Mo. 619, 267 S. W. 907; Atherton v. Railway Mail Assn. (Mo. App.), 221 S. W. 752; Wright v. Order of United Commercial Travelers of America, 188 Mo. App. 457, 174 S. W. 833; Brunswick v. Standard Acc. Ins. Co. of Detroit, Mich., 278 Mo. 154, 213 S. W. 45; Grandgenett v. National Protective Ins. Assn., 229 Mo. App. 132, 73 S. W. (2d) 341.

As to the first proposition (that the burden of proof was on the plaintiff to show that the insured was wholly disabled in the accident of January 18, 1935, and that he was continuously disabled from that date to the date of his death and that she failed so to prove), it must be admitted that the burden of proof was on the plaintiff to make such showing. The question in this case, therefore, is whether, under the evidence, the plaintiff made such a showing and whether or not the cause was properly submitted to the jury. In determining such question, we must look to the evidence in the plaintiff's favor, together with all reasonable inferences deducible therefrom and must accept the same as true.

The demurrer admits as true every fact and circumstance which the evidence adduced by the plaintiff tends to prove, and the plaintiff is entitled to the benefit of every inference of fact which may be drawn therefrom. [Stauffer v. Metropolitan St. R. Co., 243 Mo. 305, 147 S. W. 1032; Katz v. Union Central Life Ins. Co., 226 Mo. App. 618, 44 S. W. (2d) 250; Hurt v. Equitable Life Assur. Soc. of U. S. (Mo. App.), 53 S. W. (2d) 1101; Kane v. Metropolitan Life Ins. Co., 228 Mo. App. 649, 73 S. W. (2d) 826.]

The question, therefore, is whether the evidence so considered is sufficient to make it a question for the jury to say whether the insured was wholly disabled by his injury from the date of the accident and continuously thereafter or whether it is such as to preclude a submission of that question.

We are controlled in the disposition of this case, under our view, by the cases of Martin v. Travelers' Ins. Co., supra, and McDaniel v. Business Men's Assur. Co. of America, supra, and other cases in harmony with them.

In the Martin case, supra, and likewise in the McDaniel case, supra, it is held that, in order for the plaintiff to recover upon the policy in question with the *proviso* therein as is in this case, the accidental injury received by the insured must wholly and continuously disable the insured from the date of the accident; that, unless the evidence shows that the insured was so wholly and continuously dis-

abled, there could be no recovery; that it is not sufficient that the evidence may show that the death of the insured followed from the injury received within a while thereafter (as within several days or longer) but it is required that it show that the insured was wholly disabled by his injury from the date upon which it was received or within a day thereafter prior to his death and that such disability continued to his death. In other words, he may have received a fatal injury resulting from his accident, at the time of such accident, by reason of which he thereafter died; but, unless he was wholly disabled by such injury at the date thereof and thereafter continuously disabled until the time of his death, his death would not come within the provisions of the policy; and his beneficiary could not recover on account thereof.

That is this case. The evidence affirmatively shows that the insured was not wholly disabled at the time of his injury and that he was not wholly disabled from the date of such injury until his death but, on the contrary, shows that he was not. The evidence shows that, immediately upon his injury, although complaining seriously of the same, he was able to go to his regular work and work all day. Not only so; but, upon each successive day thereafter, through January 24, 1935, he pursued his regular vocation. The fact that he may have, at times, had help in doing his work, so long as he was able substantially to perform his employment, is immaterial. [Heald v. Aetna Life Ins. Co. of Hartford, Conn. (Mo.), 104 S. W. (2d) 379; James v. United States Casualty Co., 113 Mo. App. 622, 88 S. W. 125.]

It cannot therefore be said that he was wholly disabled from the date of his accident; but it must be said that he was not so disabled. The cause was not one which, upon the record, should have been submitted to the jury.

The plaintiff contends and argues that the question of whether or not one has been wholly disabled within the meaning of the terms of a policy of this character is a question for the jury. So it is, where the evidence in the case in hand is such as to authorize its submission to the jury. [Stoner v. New York Life Ins. Co. (Mo. App.), 90 S. W. (2d) 784.] But such is not the case here.

The plaintiff argues further that the insured may have been totally, wholly, and continuously disabled and yet have pursued his occupation or regular work; that it is not necessary that he be rendered absolutely helpless; that the mere fact that he performed the duties of his occupation for a time is not sufficient in itself to prevent a showing of total disability; that he may have worked when really unable and at the risk of endangering his health and life; that the fact that, under distressing circumstances and with a strong will and great courage, he did that which he was unable to do without

great physical pain and effort, which common care and prudence would have required a person in his condition to desist from doing, does not, as a matter of law, show that he was not totally disabled. There are numerous authorities to such effect.

Yet, for the application of such a rule, there must be some evidence tending to show a state of facts bringing a given case within such rule. In the case at bar, there is a total dearth of evidence tending to show disability from the date of the accident to the date of the death of the insured, almost seven days afterward. That the insured complained of his injuries from the date thereof is not, in itself, any evidence of total disability from such date where he was able to perform the requirements of his occupation and continued to do the same work that he did prior to his injury. That he had a knot on his head where he struck when he fell is not, in itself, any evidence of total disability where he continued to do the same work that he had been formerly doing. There is some evidence in this case to the effect that the insured had help after his injury. However, there is no evidence tending to show the extent of the help received or show that it was required. There is no evidence to show that he was rendered unable by his injury, from the time thereof and afterward, substantially to perform the duties of his occupation. This seems to be the test of the cases relied on by the plaintiff. Such cases are distinguished on the facts therein from the case at bar and have no application to the case at bar.

The Martin Case, supra, by our Supreme Court, is practically on all fours with this case and is controlling. In that case, the insured, from the time of his injury, continued to perform the duties of his employment for some two days and over thereafter. He afterward became totally disabled and died as a result of his injury. On the morning following the night on which he received his injury, he returned to his home with a large knot about the size of a hen egg on his body where he had been struck, complaining of great pain, which continued to the time of his death. It was held, in an action on the policy by his beneficiary after his death, that such evidence did not bring the death within the terms of the policy sued on, which required that he be wholly, totally, and continuously disabled from the date of his injury.

So it is here. The insured continued uninterruptedly at his work in his occupation after the date of his injury until the date of his death. We are not at liberty to disregard the opinion and holding of our Supreme Court, which has never been overruled, criticized, or departed from. The evidence in the case at bar does not bring it within the terms of the policy sued on, which required that he be totally and wholly disabled by his injury at the time thereof and continuously disabled therefrom thereafter until his death. The

evidence does not show that, within the meaning of such terms, he was wholly and totally disabled by his injury at the time thereof and that he was continuously thereafter wholly and totally disabled until the time of his death.

It is unnecessary to consider other points made. So long as insured's blindly accept policies of insurance without knowing the provisions thereof or without understanding the legal import of such provisions, cases of this kind will occur.

The defendant's requested instruction in the nature of a demurrer at the close of the whole evidence should have been granted. Under the evidence in the record, the cause should not have been submitted to the jury.

The judgment of the trial court is reversed, and the cause is remanded. All concur.