## HORN v. TRAVELERS INS. CO.

No. 3659.

District Court, E. D. Missouri, E. D.

Jan. 15, 1946.

Lambert E. Walther, Hugo M. Walther, and J. L. London, all of St. Louis, Mo., for plaintiff.

Jones, Hocker, Gladney & Grand, J. C. Jones, Jr., and Orville Richardson, all of St. Louis, Mo., for defendant.

HULEN, District Judge.

This action, on an accident insurance policy, by the beneficiary of the insured deceased, was submitted to a jury on interrogatories. The jury failed to agree on answers. Sufficiency of the record to make a submissible case is now challenged by defendant's motion for judgment under Rule 50 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The policy contract provided for death benefit, if insured should sustain injuries through accidental means, and thereafter be continuously and totally disabled as a result of such injuries to the time of death, and death result from such injuries. Double indemnity was provided if the accidental injury were received while insured was riding in a private automobile. The policy contained provisions for payment of partial disability.

Defendant presents two questions on its motion—Is there substantial evidence (1) that death of the insured resulted from injuries received through accidental means? (2) that insured was totally and continuously disabled from date of accident to the time of his death? In passing on the issues presented, we view the evidence and inferences reasonably to be drawn therefrom in the light most favorable to the plaintiff. Chicago, St. P. M. & O. R. Co. v. Muldowney, 8 Cir., 130 F.2d 971.

Louis F. Horn sustained injuries by accidental means on June 4, 1943, when an automobile which he was operating made a sudden stop. Horn was thrown against the steering wheel, resulting in trauma to the abdomen in the region of the navel and two or three days thereafter a black and blue area four or five inches in diameter appeared there. Prior to June 4th, insured was apparently in good physical condition and regularly employed by a cooperage firm. His injuries incapacitated him from June 4 to June 30, 1943, when he returned to work and was regularly employed thereafter until March, 1944. He drew total disability benefit for the period June 4 to June 30, 1943. No further claim was made for either total or partial disability benefits. In March, 1944, he was operated on for a hernia. On the 16th day of May, 1944, an "exploratory" operation was performed. He was found to be suffering from a "fibrosarcoma" or cancer. There was a dispute as to the exact location of the growth, one doctor placing it in the omentum. There was also evidence that it involved the ileum or peritoneum. The patient died following the operation, "from shock."

I. Plaintiff asserts that the trauma sustained on June 4, 1943, either caused or aggravated the cancerous condition then existing, and resulted in the death of insured. Horn complained of pains in his "abdomen" and "stomach," immediately after the accident and after returning to work. Such complaints continued intermittently until he quit work for the hernia operation. He lost weight, "was not as peppy as prior to the accident," his color became gray, he ceased to play golf, bowl, and "jump up and click his heels." Cancer was not suspected until about March 27, 1944.

The hernia was observed by the doctor at the time of or soon after the accident. About July 1, 1943, the insured was fitted with a truss, but complained of its hurting him, and after trying out two or three, because of the discomfort, they were no longer used. Viewing the evidence most favorably to plaintiff, we think the insured's conduct in stopping the practice of bowling and playing golf and "jumping up and clicking his heels together" could be ascribed to the presence of hernia and the wearing of a truss. Whether the cancer contributed to such conduct we think is pure speculation.

Referring to the medical testimony, Dr. Fischel, who performed the "exploratory" operation, in answer to a hypothetical question including insured's history from the time of the accident on June 4, 1943, to

time of his death, gave an opinion that this trauma " * * * may and probably did * * * " have an effect on the cause of insured's death. On the subject of shortening the life of insured, the physician testified it was a probable exciting factor to the development of malignant tumor fibrosarcoma, which was the cause of his death. The doctor would not give an opinion whether the cancer was present at the time of the infliction of the trauma. On cross-examination the doctor was asked whether or not he based his opinion on the "post hoc ergo propter hoc" theory—that because something happened after an accident, therefore it was caused by the accident. He replied that "it must be more than that";—"it is got to be based upon an accurate time sequence of events," and "within a reasonable time, development of cancer."

Dr. Raines saw the insured at his home on June 5th, the day following the accident. He found the insured "in great agony, complaining of pain in his abdomen." At that time a large mass was found "around the navel, very palpable." Between June 7th and 28th, the doctor saw the insured at his office on nine occasions. After the insured returned to work, the doctor saw him on June 30th, September 22d, 24th, October 5th, November 8th, 18th, 27th, December 2d and December 17th. He was not seen thereafter until March 27, 1944. The mass or tumor in the abdomen gradually grew larger. The doctor gave it as his opinion that the insured's death resulted from cancer and that the cancer was brought about by a very hard blow to his abdomen. The doctor stated unequivocally the cancer was present prior to the infliction of the trauma, but that it took "irritation for it to grow." There were other medical experts; some testifying that a single trauma would neither produce nor aggravate a cancer. All the medical experts agreed the cause of cancer is unknown.

Attacking this testimony, and to prove the cancer did not result from the trauma, defendant cites a line of cases, in effect holding that testimony the cancer "might or could have resulted" from trauma is not sufficient to show a causal connection between the injury and cancer. This is a correct statement of law, but the testimony in this case goes further than in those cases where plaintiff failed because the medical testimony was that trauma "might" have brought about the cancerous condition and such results were "possible." Anticipating this conclusion as to the record, defendant counters with the claim, even though there be a positive opinion the cancer resulting in death of the insured was caused by trauma, there is no basis in the facts shown, upon which the opinion must be based, that will give this opinion sufficient force to be substantial evidence.

Under the record in this case and the authority we cite, we are forced to hold against defendant's contention. It was for the jury as a fact-finding body to weigh the evidence and judge the credibility of the witnesses. We are of the opinion the evidence that the trauma aggravated the cancer and caused the insured's death to result sooner than it would have happened but for the trauma, approaches the speculative field, but under the ruling in Travelers Insurance Co. of Hartford, Connecticut v. Person, 8 Cir., 58 F.2d 210, the issue was one for the jury.

II. There is little or no dispute in the evidence as to the insured's condition and activity from the time of the injury until his death. He had been employed by the Pioneer Cooperage Company for a number of years prior to and at the time of his death. Before 1941 he was in the Sales Department and did some clerical work. During this period, he made some trips out of St. Louis to promote sales. After 1941, the company had all the business it could handle, and sales promotion trips were unnecessary. In 1943, prior to the accident, insured became Production Manager. He also handled some personnel work. As Production Manager it was insured's duty to see that the schedule of production was maintained. Excepting the period of June 4 to June 30, 1943, when the insured was disabled from the accident, he worked every working day and kept regular working hours until March, 1944, or just before the hernia operation. The only substantial evidence concerning the effect of the insured's physical condition on performance of the duties of his occupation between June 30, 1943, and the date of his death was given by Robert Magg, Walter Schaefer, Dr. Raines, and Mr. Clarkson, Vice-President of the Pioneer Cooperage Company. Robert Magg testified that a part of the insured's duties as Production Manager was to make trips "out into the yard"; that after June 30, 1943,

the insured made as many trips out into the yard as he "did before the accident, but did not stay as long." The record is silent as to any effect on performance by the insured of the duties of his occupation because of his failure to spend as much time out in the yard after the accident as he did before. Walter Schaefer, employed by the Pioneer Cooperage Company, testified that after the accident the insured "moved more slowly"; that he did not sit erect at his desk as he formerly did. Mr. Clarkson, the Vice-President and managing officer of the Pioneer Cooperage Company, stated that he saw no appreciable change in the insured's physical condition until "about" January, 1944. He applied to the Salary Stabilization Unit in February, 1944, for a raise in salary for the insured. Questioned concerning the basis of asking for a raise in salary, the witness read from the application made to the Salary Stabilization Unit "Reason: (Insured) has demonstrated ability to fill job." There was some testimony that the insured had not been seen in the yard as often after the accident June 4, 1943, as prior thereto, but there was no testimony of the insured's failing to perform any of the duties of his occupation subsequent to June, 1943, until March of 1944. On the contrary, the testimony of both plaintiff's and defendant's witnesses was to the effect that after June 30, 1943, and up until March of 1944, the insured discharged the duties of his position fully, and satisfactorily. The term used by Mr. Clarkson was "perfectly satisfactorily."

We are unable to conclude, from this record, that there is any substantial evidence from which the jury could find that the insured was, between June 4, 1943, and May 16, 1944, continuously unable to perform all the substantial and material acts necessary to the prosecution of his occupation, in the customary manner. Assuming visits by insured to the yard were necessary in the performance of the duties of his occupation, and that such visits constituted one of the substantial and material acts necessary to the prosecution of his occupation in the customary and usual manner, the most that the jury could infer from the testimony is that after June 30, 1943, the insured did not fully perform that one substantial act in the usual and customary manner. This might be evidence of a partial disability, although in making his claim in the latter part of

June, 1943, insured disclaimed even partial disability.

During argument on this motion, plaintiff's learned counsel urged the jury could infer from insured's physical condition during the period from June 30, 1943 to March, 1944, that he was continuously unable to perform all the substantial or material acts necessary to the prosecution of his occupation in the customary manner. To arrive at such a conclusion, the jury must first have inferred from insured's physical condition and history of his case, the cancer was caused or its growth accelerated by the trauma, then based upon this inference, the jury would be required to infer that the cancer caused continuous total disability from the time of the accident to the date of his death. The jury is not authorized to base inference upon inference.

By written brief, plaintiff takes the position that "the mere fact that he (insured) attempted to work at the risk of pain and suffering and danger to himself, does not preclude the beneficiary from recovering. It is not a question of whether he performed, but whether he was able to perform." This rule of law is well recognized. Does the evidence bring the plaintiff's case within the exception that even though insured did continuously perform all the substantial and material acts necessary to the prosecution of his occupation, in the usual and customary manner, from June 30, 1943, to March, 1944, his conduct in that respect was at the risk of pain and suffering and danger to his life? To support this position, plaintiff relies upon the testimony of Dr. Raines. We are not in agreement with plaintiff that this evidence made a case under the exception to the general rule. The record does not in our opinion sustain the statement contained in plaintiff's brief: "Dr. Raines testified that in his opinion Horn was not able to do his work after the accident, and stated that he should not have worked." The Doctor was asked, on direct examination, "whether he (insured) was able to do the work?" Answer to this question was objected to and stricken. The witness declared insured went back to work "against his advice," and was not able to "continuously walk around" the plant. There is no evidence that such physical exertion was ever required of insured in the performance of his duties. But in making this inquiry,

counsel was careful to restrict the time inquired about to "right after the accident, when he returned." As to the insured returning to work against the Doctor's advice, the Doctor's explanation on cross-examination was not that it would endanger insured's life or increase his pain and suffering, but because "he should have waited until the tumor in his abdomen had receded or we made a diagnosis of the man." Neither the Doctor nor anyone else testified, or was asked to testify, that engaging in work would aggravate the insured's condition or cause insured to suffer pain. On the record, progress of the cancer and insured's physical condition were not adversely affected by his work. The witness stated on direct examination that he did not think the insured could work "for half a day at a time." On cross-examination he testified, "I wouldn't know," whether insured was capable of working at the duties of his occupation for half days at a time.

In the case of Tripp v. Metropolitan Life Insurance Co., Mo.App., 144 S.W. 2d 160, loc.cit. 164, recovery was denied on an insurance contract, on a claim of total disability where the insured was given some aid in the performance of his duties but "his work was done satisfactorily and with no complaint to his foreman of any illness or inability * * *." In Hamm v. Metropolitan Life Insurance Co., St.L. Ct. of Appeals, 166 S.W.2d 324, loc.cit. 331, plaintiff was unable to sustain a claim of total disability on an insurance policy, where insured had "periods of weakness and partial disability when he was aided by fellow workmen in doing some parts of his work. * * * there were times * * * during which he would be required to cease his work and rest; and that there were also times when he would be given lighter work because of his complaints about his physical condition." Recovery was denied because "there is no testimony whatsoever in the record to show or from which it could reasonably be inferred that plaintiff, when engaging in the various employments shown in the evidence, at any time was doing so at the grave risk of his health or life." The case of Smith v. Metropolitan Life Insurance Co., Mo.App., 108 S.W.2d 995, is to the same effect. Also see Jones v. Metropolitan Life Insurance Co., Mo.App., 130 S.W. 2d 967. There is evidence in the case under submission that the insured at various times complained of pain in his stomach while at work, but no evidence that such condition prevented him from performing the duties of his occupation. In the case of Spigener v. Great Western Insurance Co., 232 Mo.App. 659, 107 S.W.2d 847, loc.cit. 851, a suit for benefits under a total disability policy, the Court said: "That the insured complained of his injuries from the date thereof is not, in itself, any evidence of total disability from such date where he was able to perform the requirements of his occupation and continued to do the same work that he did prior to his injury. That he had a knot on his head where he struck when he fell is not, in itself, any evidence of total disability where he continued to do the same work that he had been formerly doing."

There is some evidence in this case that one of the workmen was used to run errands for Horn. In the Spigener case the Court observed: "there is some evidence in this case to the effect that the insured had help after his injury. However, there is no evidence tending to show the extent of the help received or show that it was required." The same may be said of the case at bar. In the case of Glore v. Metropolitan Life Insurance Co., Mo.App., 153 S.W.2d 770, 773, a suit under total disability provision in an insurance policy, the Court comments that insured "was sometimes found lying down or sitting down during working hours," but concludes "it does not appear that this in any manner interfered with the proper performance of his work." It does not appear from the record in this case that Horn's conduct in visiting the yard as often after the accident as prior thereto, but not staying as long, interfered in any manner with the proper performance of his duties in the usual and customary way. In the Glore case, the court distinguishes cases where recovery was permitted, notwithstanding evidence that the insured prosecuted his occupation after his injury, and cases where recovery was denied because of such fact. We quote: "An examination of all such cases, however, discloses that in every instance where a judgment for a claimant was affirmed there was evidence in the case from which it could be reasonably inferred that the employee was able to perform his work only by virtue of the assistance of others or by the exercise of extreme, extraordinary, and painful efforts involving grave risks of health and life."

64

That the insured was afflicted with a cancer during the period in which he was engaged in his employment with the cooperage company will not, on that ground alone, authorize. an assumption that he was totally disabled for the duration of the disease, in the absence of proof to that effect. See Fauer v. Aetna Life Ins. Co., 2 Cir., 70 F.2d 693.

Plaintiff cites cases from other jurisdictions holding "that when a disability follows an accidental injury, within such time as the processes of nature require to totally incapacitate the injured person, such disability is immediate and, in law, begins on date of the accident." Such is not the law in Missouri. See Martin v. Travelers' Ins. Co., 310 Mo. 411, 276 S.W. 380, 41 A.L.R. 1372. And it is the latter we must follow. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

We are unable to believe that fair-minded jurors could draw different inferences or conclusions on this phase of the case. On the record and the authorities cited, we conclude that there is no proper evidence from which the jury could conclude that the insured performed the duties of his occupation by virtue of the assistance of others or by the exercise of extreme or painful efforts or that his performance of the duties of his occupation involved any risk to his health or life.

For the reasons stated, defendant's motion will be sustained and order will go accordingly.