DANIELS v. BROWN.

No. 43685.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Eugene E. Northern, Breuer & Northern, Rolla, for appellant.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Ransom A. Ellis, Jr., Donald J. Hoy, Springfield, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff, a minor, by his duly appointed next friend, Walter Daniels, sued to recover $30,500 for personal injuries and damages to his automobile sustained in a collision of his automobile with a motor truck owned and operated by defendant. Defendant admitted the collision, denied it was caused by his negligence and, by way of counterclaim, sought to recover from plaintiff the sum of $40,500 for personal injuries, loss of earnings and damages to his truck. At the close of plaintiff's case, the trial court, out of the presence of the jury, held that plaintiff's testimony showed the collision occurred when plaintiff, in violation of Section 304.020(5) RSMo 1949, V.A.M.S., undertook to pass defendant's truck at an intersection, and that plaintiff was guilty of contributory negligence as a matter of law. The court then, without advising the jury of its reasons for so doing, directed the jury to return a verdict for the defendant on plaintiff's cause of action, which the jury then and there did. Plaintiff, by leave of court, filed an amended reply and answer, in which he denied the negligence charged against him in defendant's counterclaim and pleaded contributory negligence of defendant in failing to keep his motor vehicle as close to the right side of the highway as practicable and in failing to comply

with Section 304.020(6) RSMo 1949, V. A.M.S., requiring him, in making a left turn at an intersection, to go beyond the right of the center of the intersection before turning.

The evidence was heard upon the issues presented under defendant's counterclaim and plaintiff's answer thereto. The jury returned a verdict in favor of defendant on his counterclaim in the sum of $21,000. Plaintiff's motion for new trial was overruled on condition defendant remit $6,000 of his verdict, with which condition defendant made timely compliance, and judgment was entered in favor of defendant in the sum of $15,000. Plaintiff appealed.

The alleged errors of which plaintiff-appellant complains are: (1) direction of verdict for defendant on plaintiff's cause of action; (2) improper cross-examination of plaintiff's witness, Dr. Cottingham; (3) the verdict for defendant is based upon false testimony, is contrary to medical and roentgenological science, and is without probative force; (4) the giving of Instruction No. 4; (5) improper argument made to the jury by defendant's counsel; and (6) the judgment is grossly excessive.

No complaint is here made of the action of the trial court in requiring the jury to return a verdict for defendant on the cause of action alleged in plaintiff's petition at the close of plaintiff's evidence instead of withholding such direction until the close of all of the evidence.

The collision occurred about 1:30 p. m., on March 8, 1951, a clear, dry day, on U. S. Highway No. 63, immediately north of its intersection with an east-west gravelled county road along the division line of Maries and Phelps Counties. At that point Highway 63 is practically level, paved with concrete, two traffic lanes in width, and extends due north and south. Plaintiff and defendant were driving their respective motor vehicles southward on Highway 63, plaintiff to the rear of defendant. Both parties were thoroughly familiar with Highway 63 and the intersecting county road. Plaintiff's petition alleged and defendant testified that as they approached the intersection defendant signalled an intention to make a left turn onto the county road. The front end of plaintiff's automobile collided violently with the rear of defendant's truck when both vehicles were entirely on the west or right side of Highway 63. Both plaintiff and defendant were severely injured and their respective motor vehicles were damaged. The evidence is conflicting as to the course taken by each of the parties immediately prior to the collision.

Plaintiff's testimony as to the manner in which the collision occurred was: He was the owner of the 1941 Ford automobile involved in the collision. Immediately prior to the collision, he was driving his car south on U. S. Highway 63, at a speed of "somewhere around" fifty or sixty miles per hour. He could see straight ahead to the south about three-fourths of a mile. He saw defendant's truck ahead of him, traveling south on its right side of the pavement. Plaintiff could not tell how fast defendant was traveling, but he was not traveling as fast as plaintiff. Plaintiff overtook defendant and pulled to the left side of the pavement and prepared or undertook to pass defendant's truck and "speeded up to go around". At that time defendant's truck was on the right side of the highway. When plaintiff pulled to the left side to pass defendant's truck, plaintiff was the equivalent distance of two or two and one-half city blocks north of the intersecting county road. When plaintiff pulled to the left side of the highway for the purpose of passing, defendant's truck also moved over to the left in front of plaintiff. Plaintiff then "cut" his car back to the right side of the highway and applied his brakes, and defendant's truck also moved back to the right side in front of plaintiff. Plaintiff kept "swinging" to the right and got partly on the right shoulder, but defendant came over so fast that plaintiff could not get away from him, and his car ran into the right rear of defendant's truck.

Defendant's version of the collision was: He had driven south on Highway 63 at a speed of 35 to 40 miles per hour for a distance of about one-half mile on his

right side of the highway before the collision occurred. He intended to turn east on the county road. When he was about 200 feet north of the intersection, he extended his left arm out of the left window of his truck and then lowered his arm as a left-turn signal. At that time he was aware of plaintiff's car being to his rear about 600 or 700 feet. He gradually lowered his speed by taking his foot off the accelerator but continued to travel upon his right side of the pavement because he then saw plaintiff's car about 150 feet north of him overtaking him along the left side of the highway. He brought his arm back into the truck and in a "matter of seconds" plaintiff's car struck the rear end of his truck within a few feet north of the intersection. He had reduced his speed to about 20 miles per hour when he gave the arm signal of his intention to turn to the left, but when he saw plaintiff overtaking him he abandoned the idea of making the turn and continued along the extreme right of the pavement until his truck was struck.

A highway patrolman, called as a witness in behalf of plaintiff, testified: The point of impact occurred on the right side of Highway 63 approximately 7½ feet north of the north line of the county road as it intersects Highway 63 on the west. (There is a jog in the county road at its intersection with Highway 63, the road to the east of the highway being approximately 7½ feet south of the road to the west of the highway.) Plaintiff's car came to rest about 50 or 60 feet south of the point of impact. Extending back north from the point of impact were two tire marks made by plaintiff's car. The mark made by the left wheel of plaintiff's car was 80 feet in length and began east of the center line of the pavement and went in a straight line to the point of impact. The mark made by the right wheel of plaintiff's car was approximately 100 feet in length. It began west of the center line of the pavement and extended in a straight line to the point of impact. Both vehicles were entirely on the right side of Highway 63 at the time and point of impact.

Plaintiff contends the evidence presents a jury question whether, if defendant had not interrupted his passage by turning to the left and in front of his automobile, plaintiff would have passed defendant and returned to his side of the highway before reaching the intersection. Defendant contends the evidence conclusively shows that plaintiff could not have passed his truck and returned to his right side of the highway before reaching the intersection and that he was guilty of contributory negligence as a matter of law, citing in support thereof Purdy v. Moore, Mo.App., 224 S.W.2d 838, 840.

■ We have concluded, however, that, in view of the verdict of the jury in favor of defendant on defendant's counterclaim, which of necessity was predicated upon a finding that plaintiff's negligence was the sole cause of the collision, it is wholly immaterial whether the trial court erred in holding plaintiff guilty of contributory negligence as a matter of law. In submitting the counterclaim, the court, at the instance of defendant, gave Instruction No. 1: "* * * if you find and believe from the greater weight of all the credible evidence that * * * plaintiff Samuel Daniels failed to exercise the highest degree of care in that as he approached the point on Highway 63 where it is intersected by the county road * * he drove said automobile to the left of the center of the highway for the purpose of overtaking and passing the truck operated by defendant, * * * and if you further find that while so operating said automobile on the left side of the highway, * * * the plaintiff swerved his automobile back to the right side of the highway and in so doing collided with the defendant's truck * * *, and if you further find that at all times mentioned in evidence the defendant was operating his truck on the right side of the centerline of said highway in the exercise of the highest degree of care and was not himself guilty of any contributory negligence as submitted in other instructions, and if you further find that as the direct and proximate result of said collision defendant

sustained injury to his person and damage to his truck, then * * * you should find the issues for the defendant on his counterclaim."

And, at the instance of plaintiff, the court gave Instructions Nos. 5 and 6. Instruction No. 5 directed the jury: "* * if you find and believe from the evidence that while plaintiff was in the left lane of travel for the purpose of passing defendant's truck, and if you further find that thereafter defendant pulled his truck into the left lane and in front of plaintiff's car and thereby prevented plaintiff from passing, if so, and if you further find that thereafter plaintiff pulled his car back into the right-hand lane of travel, if he did, and if you further find that immediately thereafter the defendant likewise pulled his truck also back into the right-hand lane of travel, and so near to plaintiff's car that it was impossible for plaintiff, by the exercise of the highest degree of care, to avoid striking the rear of the truck of the defendant, thereby resulting in the collision mentioned in evidence * * then defendant cannot recover on his counterclaim, * * *." Instruction No. 6 directed the jury that if it found both parties guilty of negligence, as hypothesized in the foregoing instructions, then defendant was not entitled to recover on his counterclaim.

It is clear, therefore, that when the jury found that plaintiff negligently ran his car into the rear end of defendant's truck on the right side of the highway and that defendant's truck was never on the left side of the highway, its finding, supported by substantial evidence, is conclusive of the *fact* of plaintiff's negligence being the sole cause of the collision. Consequently, the question whether the trial court erred in holding him guilty of contributory negligence as a matter of law is moot. We need not further consider it.

■ The verdict in favor of defendant on his counterclaim also disposes of plaintiff's contention that he was entitled to a submission of his case under the humanitarian doctrine. When the jury found the facts as hypothesized in the above instructions, no conceivable theory exists upon which humanitarian negligence could be predicated.

■ Plaintiff contends that the trial court erred in permitting defendant's counsel, on cross-examination of plaintiff's witness, Dr. Cottingham, to interrogate him as to the names of former patients who had suffered injuries similar to the injuries defendant claimed to have sustained as a result of the collision to wit, a fracture of the transverse process of the fifth lumbar vertebra; and in ordering the witness to divulge their names if he remembered them. On direct examination, the witness had testified, in support of his qualifications as a medical (osteopathic) expert, that he had treated the spines of twelve or fifteen patients who had suffered a fracture of the transverse process of the spine, and that such an injury was not considered serious and permanent. Upon cross-examination, counsel for defendant insisted that the witness name one of such patients. Counsel for plaintiff objected on the ground that the answer would violate the confidential relationship between physician and patient. The trial court overruled the objection and directed the witness to answer. The witness finally admitted that he was unable to recall the name of any such patient. Plaintiff says this placed the witness in a "humiliating, embarrassing and shameful position". Unless the witness testified falsely (as plaintiff's counsel suggests he may have done) in stating that he could not recall the name of any such patient, we cannot see how his answer would humiliate, embarrass or shame him. We have examined the witness's testimony carefully and find no evidence warranting the conclusion that the witness had testified falsely in that respect, and plaintiff cites us to none. If, to protect his patients' rights of nondisclosure of their names, he desired not to answer, he should have refused to do so. Had the court undertaken to punish him for contempt, his right to refuse to answer could have been determined in a proper proceeding. In any event, however, no

confidence was revealed, and it is of no consequence in this case whether the trial court erred in directing the witness to answer the question.

Plaintiff contends that the verdict for defendant on his counterclaim is based upon false testimony of defendant's witness, Dr. Davis, and that the doctor's testimony is contrary to medical and roentgenological science. Dr. Davis was the only medical witness offered by defendant. He testified, in part, that a white line to which he pointed on an X-ray picture indicated a fracture and that that was the way in which a bone fracture is shown on an X-ray; that the prognosis of defendant's injury was that "it will get worse"; that it was a serious and permanent injury; that he had not had occasion to see "too many" fractures of transverse processes of the spine and was not in a position to answer whether such a fracture ever heals; and that he was basing his opinion that defendant's injury was permanent upon the individual case.

■■■ In support of his position that the statements of Dr. Davis are "false and contrary to medical science", plaintiff cites extracts from the writings of several recognized medical authorities that seem to take issue with some of Dr. Davis' conclusions. Significantly, however, plaintiff cites no legal authority that authorizes this court to weigh and determine the credibility of Dr. Davis' testimony, and certainly we have no judicial knowledge of the matters concerning which he testified. The writings upon which plaintiff relies do not of their own weight establish verity. Extracts from the writings were read to the witness and the jury during the cross-examination of Dr. Davis. It was the province of the jury, not of this court, to determine the credibility of the witness' testimony. Roderick v. Metropolitan Life Insurance Co., 231 Mo.App. 852, 98 S.W.2d 983, 984; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 337, and cases therein cited. See also Vol. 3, Part 2, Missouri Digest, Appeal and Error, ■■■

At the request of defendant, the trial court gave Instruction No. 4, as follows: "The court instructs the jury that Walter Daniels, father and next friend of plaintiff, Samuel N. Daniels, is a mere technical party as representative of plaintiff. You are, therefore, instructed that if you find the issues in favor of defendant and against plaintiff on defendant's counterclaim there will be no obligation on the said Walter Daniels to pay said judgment or any part thereof." Plaintiff says that when considered in connection with the voir dire examination of the jury and defendant's oral argument to the jury the instruction was calculated to lead the jury to believe that plaintiff's insurer would pay any judgment returned against plaintiff.

Each of the parties had insurance and each examined the jury panel as to any connection any member of the panel might have with the named insurer of the opposite party. During the argument of the case to the jury, defendant's counsel stated that plaintiff's father, Walter Daniels, was not going to pay one penny of the judgment; that Instruction No. 4 told them he was not going to pay it; and further: "What is right? What is right and what is proper, remembering the father of that boy doesn't have to pay a penny of this?"; and further: "I am not asking one penny from this boy's father. You return the judgment and don't worry about who is going to pay it; that isn't a question to be decided here."

Plaintiff argues that "considering the fact that the father was not legally obligated to pay the judgment other than the costs, the fact that the plaintiff was a minor, and there being no evidence that the boy had any property of the value of $25,000, it could reasonably have been construed by the jury that whatever verdict they returned against the plaintiff would not be paid by the plaintiff or his father, but by his insurer, and this instruction and the argument of the counsel was prejudicial and such prejudice is evidenced by the fact that the jury, under all the facts and circumstances, returned a verdict

against the plaintiff in the sum of Twenty-one Thousand Dollars ($21,000)."

Defendant insists that the instruction was necessary because plaintiff's father (and next friend) had been called to the stand by plaintiff's counsel to testify to medical and hospital bills paid by him on account of plaintiff's injuries. The father did testify that he had paid out or had become liable for medical and hospital bills for plaintiff in the sum of $1,038.15, and that he had authorized plaintiff to sue to recover said sum, waiving all claims he, the father, might have against defendant for the amounts expended by him. On cross-examination, the father stated he had not understood, until defendant's counsel explained it to him, that he was not really a party to the suit, and further: "Q. Now you understand if the judgment is returned here, that is not your responsibility, you don't have to pay any part of it, you know that, don't you; that it is against this boy, you understand that? A. I didn't understand it that way. Q. Well, do you understand it now? A. I got your word for it."

 The trial court has a broad discretion in the giving or refusal of cautionary instructions such as the one here under consideration, and the appellate courts will not interfere with that discretion unless there is a clear abuse of it. Enyart v. Santa Fe Trail Transp. Co., Mo.Sup., 241 S.W.2d 268, 269. The instruction does no more than advise the jury that plaintiff's father would not be liable for any judgment rendered against the plaintiff. Neither by its terms nor by innuendo does it carry any inference that any one other than plaintiff would ever be called upon to pay any judgment rendered against him on defendant's counterclaim. (Of course, Walter Daniels, *as next friend of plaintiff*, was obligated by statute to pay any costs adjudged against plaintiff. Section 507.180, RSMo 1949, V.A.M.S. But that is a minor unexplained discrepancy in the instruction and is immaterial.) The contention is overruled.

During the closing argument, defendant's counsel stated: "I remember that when we started out in this case, Mr. Northern came here and told you that he represented a client who was entitled to recover damages, and if I ever heard a strange statement made in a Court,—it is enough to set the hair on the back of your neck, when a man is driving down the highway, not doing a thing in the world but minding his own business, and a young fellow runs up behind him and strikes him in the back, and then he says, 'I am representing a client who is entitled to recover damages.' Well, did he recover damages? You know what happened this morning, when the Judge put an end to that in a hurry and when Mr. Seaton signed what the law knows as a directed verdict, and the Judge of the Court put an end to that and took that clear out of the case.

"Mr. Northern: Now, if the Court please, we want to object to that line of argument for the reason that matter is not in this case, and the Court will recall that we discussed that matter beforehand, and the Court told me I had no right to tell the jury why it was that the Court had directed a verdict for the defendant."

The trial court sustained the objection but refused plaintiff's motion to declare a mistrial. Plaintiff contends this argument called the jury's attention to the ruling of the court in sustaining defendant's motion for a directed verdict; that the argument told the jury that the court had decided who had caused the collision and had the effect of telling the jury that the court was on the side of defendant and that the court had told them who should recover.

 The argument should not have been made. The plaintiff's right to recover was a closed issue insofar as the jury was concerned. But the argument did not, in fact, tell the jury any more than it already knew and it carried no innuendo that the court was on the side of the defendant. The court promptly sustained the objection. It was in a better position than this court to determine what effect, if any, the argu-

ment had. The court again considered the matter in ruling plaintiff's motion for new trial. We are not convinced that it had any prejudicial effect. But if it did, we think it was erased by the prompt sustention of the objection made thereto. In such a situation we should and do defer to the judgment of the trial court. Polizzi v. Nedrow, Mo.Sup., 247 S.W.2d 809, 813.

Finally, plaintiff contends that the judgment of $15,000 as finally entered by the trial court is grossly excessive. The whole of plaintiff's argument on that score is as follows: "We submit that not only was the $21,000, less the property damage, excessive for the only injury which the evidence showed on the part of the defendant existed at the time of trial, but we also earnestly contend that the $15,000 less the property damage, as fixed by order of the trial court in ordering remittitur, is grossly excessive and was the result of bias and prejudice on the part of the jury under all the facts and circumstances surrounding the trial of this case." No authorities are cited, no suggestion is made, as to wherein or why $15,000 is excessive compensation for the injuries and property damage sustained by defendant.

■ In reviewing this assignment, we do not weigh the evidence, but we do examine the record to determine whether there is substantial evidence to support the ruling of the trial court. If the evidence, viewed in the light most favorable to the ruling, affords reasonable and substantial support of it, then it must be sustained. Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426, 431; Wilhelm v. Haemmerle, Mo.Sup., 262 S.W. 2d 609, 612–613.

Defendant's evidence tended to show that, prior to the collision, defendant was an able-bodied man, 36 years of age, engaged in hauling livestock and merchandise by motor truck, earning an average of $200 per month. The collision almost demolished his truck, knocked the truck bed up against the cab and bent the back of the cab, broke the water pump loose and drove the back axle forward. Following the collision, defendant went to his home and thereafter went on to St. Louis in a borrowed truck. Severe pain developed in his back that night. He consulted a chiropractor three or four days after the collision and took treatments from him for three or four weeks. The pain continued and he consulted Dr. Davis. He has been a patient of Dr. Davis continuously since that time and has consulted or taken treatments from him about ninety times. Dr. Davis gives him "shots in the arm". They help the pain, but his back always hurts.

Defendant was almost totally disabled for more than eleven months. During that time, however, he did chores for his mother, earning about $10 per week. His loss of earnings during that period were around $1,900. For about six months prior to the trial he had been able to earn an average of $120 per month at part-time employment, a total of $480 less than his average earnings. The damage to his truck was $350. His medical bills amount to $387. Thus, the total special damages suffered by defendant amounted to $3,117 at the time of trial.

Defendant's medical testimony showed that he suffered a fracture of the transverse process of the fifth lumbar vertebra. The fracture was deflected upward, the pelvis was tilted and the vertebra itself injured. Defendant also suffered injury to his urinary tract, evidenced by blood in his urine, but that condition has cleared. Due to his injuries arthritic changes are occurring in defendant's back. The medication given him is to prevent, if possible, further development of that condition. It was the doctor's considered opinion that defendant was not able to work. The prognosis is bad and, in the doctor's opinion, the condition of defendant's back will worsen. There is no treatment that will relieve the condition. The injury is permanent and very disabling.

■ The trial court, who heard the witnesses and saw the defendant throughout the trial, concluded that $21,000 was excessive, but that $15,000 was reasonable compensation for the damages sustained by

defendant. We cannot say as a matter of law that such an award for injuries of the character, extent and permanency here shown to have been suffered by a formerly able-bodied man, 36 years of age, is excessive.

The judgment is affirmed.

All concur.